## Staunton.

### BROWN v. RICE'S ADM'R.

September 14, 1882.

1. EQUITABLE DEFENCES—*Fraud and mistake.*—A and J, partners, give two notes to R. Both partners die. After the notes are barred by the statute of limitations, M, administratrix of J, executes two bonds to R for half of the amount of the notes. To do this M is induced by R's proposition, that if M will give her bonds for one-half of the amount of the notes, R will settle the other half with A's executrix, who is R's daughter, and thus release the estate of J from all liability for the latter half of said notes.

HELD:

    1. Whether M executed the bonds under influence of fraudulent representations of R that the notes were valid and binding debts against J's estate, when in fact they were barred by the statute of limitations, or whether she executed the bonds under a mistaken belief that the notes were still valid and binding debts against her intestate's estate, or whether the mistake was confined to M, or whether it was common to both her and R, M's case is one proper for relief in equity, or at law under the equitable defences given by the statute.

    2. When in a court of law the defendant's defences are, under the statute, equitable pleas, the rules of equity prevail, and he is entitled to the same relief as if in a court of equity.

    3. The proposition of R to release J's estate from one-half of a note of J, upon J's administratrix executing a bond for the other half of said note, seems to be an unequivocal representation that J's estate was bound for the whole of the note.

2. PRACTICE AT COMMON LAW—*Instructions.*—An instruction which undertakes to recite the evidence must recite all the evidence; otherwise the jury may be misled into deeming the unrecited evidence immaterial.

3. IDEM—*Idem.*—An instruction which says "fraud must be clearly proved," without adding that it may be proved by circumstances, is also calculated to mislead.

4. IDEM—*Idem.*—An instruction that no ignorance or mistake of law can be considered as a defence in this case, because the suit was in a court of law, is erroneous, because the defendant's defences were under equitable pleas.

5. IDEM—*Evidence—Adverse party as witness—Surprise—Motion for new trial.* The court's certificate of the witness' evidence at the former trial is not legitimate evidence before the jury to discredit his testimony at the second trial. Yet, when plaintiff is necessarily introduced by defendant to prove a fact which is provable by no other witness, he is not a witness of defendant's selection. If his testimony on the first trial was such as induced defendant to introduce him as a witness on the second trial, and varied materially from his testimony at the second trial, the variance was a surprise on the defendant and a circumstance proper for consideration on a motion for a new trial.

6. IDEM—*Verdict at first trial—Case at bar.*—At first trial jury rendered for plaintiff a verdict for a part of the debt in the declaration demanded, which appears to have been in accordance with the evidence and with the instructions of the court. The court improperly set aside this verdict on the plaintiff's motion, and granted a new trial; to which ruling defendant excepted, and filed his bill of exceptions, certifying all the evidence. It appearing from the evidence so certified that the verdict was warranted by it, and that the court erred in setting it aside and granting a new trial—

HELD:

All the proceedings subsequent to the said verdict were erroneous and must be set aside; and the appellate court will enter such judgment as should have been rendered by the circuit court.

Error to judgment of circuit court of Rockingham county, rendered 15th March, 1879, in action of debt wherein William R. Warren, administrator of Milly Rice, deceased, was plaintiff, and Mary B. Brown was defendant.

A. W. & J. G. Brown, on 16th February, 1854, made a note for $3,392.66, and on 16th February, 1857, made another note for $391.39, both payable on demand to Milly Rice. Payments were made on these notes. J. G. Brown died in 1857, leaving his widow, Mary Brown, his sole legatee, devisee and executrix. A. W. Brown died in 1861 intestate, and his son B. S. Brown and his widow Mary B. Brown qualified as his personal representatives. In 1868

B. S. Brown died, leaving his mother, Mary B. Brown, surviving administratrix. On 24th February, 1869, when the largest of said notes was clearly barred by the statute of limitations, William R. Warren, agent of Milly Rice, sent a message to Mary B. Brown that said notes were in his hands for settlement; that Milly Rice designed giving one-half of the amount thereof to her daughter, Mary Brown, widow and executrix of J. G. Brown, as part of her legacy, if she, Mary B. Brown, as administratrix of A. W. Brown, would execute new bonds to Milly Rice for the other half of the said notes; and that by her doing so, he, as agent for Milly Rice, would release A. W. Brown's estate from all further liability for one-half of the notes. Mary B. Brown and her legal adviser believed that said notes were valid, subsisting debts, for which A. W. Brown's estate was then bound; and he advised her to accept the proposition. On 24th February, 1869, she executed, as administratrix of her intestate, to Milly Rice a bond for $1,900, with interest from 1st July, 1869, payable at one day after date, and another for $491.55 payable 1st July, 1869.

Later, suit was brought on these bonds by Warren, administrator of Milly Rice, deceased, against Mary B. Brown; defendant tendered two special pleas, which were substantially to the effect that plaintiff's intestate, Milly Rice, had in her lifetime fraudulently procured from her, as administratrix of A. W. Brown, deceased, the said bonds, in consideration of one-half of two notes not under seal, which had been executed to Milly Rice by A. W. & J. G. Brown, by falsely and fraudulently representing to her, the defendant, that the said notes were still unpaid, valid, and in full force in law against the estate of A. W. & J. G. Brown; when, in truth, both notes were barred by the statute of limitations; and that this fact was well known to Milly Rice, but was fraudulently concealed from the defendant.

Both of these pleas were rejected by the court below, and judgment rendered for the amount of the bonds. On writ of error the judgment was reversed, and the cause remanded with directions that the pleas be received, and the plaintiff required to take issue thereon. See *Brown* v. *Rice's Adm'r*, 26 Gratt. 473.

At the second trial in June, 1877, on the issues made by said special pleas, there was a verdict for the plaintiff for $195.69, with interest from 1st July, 1869, till paid, *part* of the debt in the declaration demanded. This verdict the circuit court, on motion of the plaintiff, set aside, and granted a new trial. To the decision of the court granting the new trial, defendant excepted and filed her bill of exceptions, which is given in full for the better understanding of the points decided in this cause:

## BILL OF EXCEPTIONS.

Be it remembered, that upon the trial of this cause, the plaintiff, to sustain the said action on his part, read in evidence the writing obligatory in his declaration mentioned, and then and there rested his case; and thereupon the defendant, to maintain the issue on her part, read the two notes of A. W. & J. G. Brown to Milly Rice, produced in court by the plaintiff upon a *subpœna duces tecum*—to-wit: one for $3,392.66, dated February 16, 1854, and payable on demand, in words and figures following:

· $3,392.66. On demand we promise to pay to Milly Rice, or order, thirty-three hundred and ninety-two dollars and 66 cents, for value received.

Witness our hand, this 16th day of February, 1854.

A. W. & J. G. BROWN.

Endorsements—1855, February 16, by interest paid one year, $203.56. Credit by interest paid for one year, $203.56,

Statement.

February 16, 1856. Credit by interest for one year, February 16, 1857, $203.56. Credit by interest for one year, February 16, 1858, $203.56. February 16, 1859, credit by interest paid for one year, $203.56. February 16, 1860, credit by interest paid you one year, $203.56. February 16, 1861, credit by interest paid for one year, $203.56. By one-half the interest due December 16, 1863, $293.33 from B. S. Brown, administrator of A. W. Brown. Credit by cash paid B. S. Brown, administrator of A. W. Brown, deceased, $70, September 15, 1865. Mrs. Mary B. Brown has executed her note for one-half of principal and interest of within note to July 1, 1869, which releases the estate of A. W. Brown from all liability in this bond.

W. R. WARREN,<br>
Agent for Milly Rice.

The other for $391.39, dated February 16, 1857, and payable on demand, in the words and figures following:

$391.39. On demand we promise to pay to Milly Rice, or order, three hundred and ninety-one dollars and thirty-nine cents, for value received.

Witness our signatures, this 16th day of February, 1857.

A. W. & J. G. BROWN.

Endorsements—February 16th, 1858, credit by interest paid for one year, $23.48. February 16, 1859, credit by interest paid one year to date, $23.48. February 16, 1860, credit by interest paid one year, $23.48. February 16, 1861, credit by interest paid one year, $23.48. By $33.26 paid by B. S. Brown, administrator of A. W. Brown, one-half the amount of interest due December 16, 1863. Credit by this amount paid by Mary B. and B. S. Brown, administrator of A. W. Brown, deceased, $54.29, November 24, 1866.

Mrs. Mary B. Brown, administratrix of A. W. Brown, has

executed her note for the one-half of the within note and interest to July 1, 1868, and this releases the estate of A. W. Brown from all liability on this bond.

W. R. WARREN,

Agent for Milly Rice.

Together with the endorsements thereon in the words and figures following, to-wit: (see endorsements above)— then the calculation of the amount of said two notes made by William McK. Wartmann in the words and figures following:

Statement of calculation dividing bonds executed by A. W. Brown & J. G. Brown to Milly Rice, February 16, 1854, and February 16, 1857:

| | | |
|---|---:|---:|
| Bond executed February 16, 1854, all interest paid jointly to February 16, 1861, - - | $3,392 66 | |
| Bond executed Februrry 16, 1857, all interest paid jointly to February 16, 1861, - | 391 39 | |
| Amount of both bonds, February 16, 1861, | 3,784 05 | |
| Amount due from J. G Brown's estate, one-half, | 1,892 02½ | |
| Amount due from A. W. Brown's estate, one-half, - - - - - | 1,892 02 | |
| Interest paid on A. W. Brown's one-half by B. S. Brown, administrator, as per endorsement on bonds to December 16, 1863, - $326 59 | | |
| Interest from December 16, 1863, to January 24, 1869, - - - - - | 579 58 | |
| | $2,471 60 | |
| Deduct— | | |
| Credit September 15, 1865, as endorsed, $70 00 | | |
| November 24, 1866, - - 54 29 | 124 92 | |
| Amount due on A. W. Brown's one-half, January 24, 1869, - - - - - | $2,347 31 | |

The credit of $326.59, December 16, 1863, overpays the interest due at that time, $4.95, which A. W. Brown's estate must have credit for.

WM. McK. WARTMANN.

January 22, 1869.

Then the receipt of William R. Warren, agent of said Milly Rice, dated February 24, 1869, in the words and figures following:

Received, February 24, 1869, of Mary B. Brown, surviving administratrix of the estate of A. W. Brown, deceased, her notes of hand as the surviving representative of said estate, one note for $1,900, dated February 24, 1869, and payable one day after date, and one other note for $491.55, dated February 24, 1869, and payable on or before the 1st day of February, 1869; said last mentioned being for interest due at that date on the half of the two bonds executed by A. W. & J. G. Brown to Milly Rice—said notes being the one-half of two several notes, principal and interest, to February 24, 1869; which notes were executed by A. W. & J. G. Brown to Milly Rice, and it is hereby expressly declared and understood that in consideration of the two foregoing notes of $1,900 and $491.55, the estate of A. W. Brown, deceased, is fully released from all further reponsibility to said Milly Rice on account of the joint notes before mentioned, executed by said A. W. &. J. G. Brown.

Given under my hand.

WM. R. WARREN,
Agent for Milly Rice.

Endorsement—Milly Rice's receipt releasing A. W. Brown's estate of one-half of a joint note drawn by the firm of A. W. & J. G. Brown in favor of the said Milly Rice. Then the execution in favor of Mary B. Brown, administratrix of A. W. Brown against the goods and chattels

of J. G. Brown, deceased, in the hands of Mary Brown, his executrix, dated 2d April, 1875, for $5,387.83, with interest, &c., and the returns thereon, in the words and figures following:

The Commonwealth of Virginia—

       To the Sheriff of Rockingham county—Greeting: We command you that of the goods and chattels of J. G. Brown, deceased, in the hands of Mary Brown, his executrix, late in your bailiwick, you cause to be made the sum of $5,387.83, with interest on $3,165.54, part thereof, to be computed after the rate of six per centum per annum, from the 10th day of September, 1875, till payment, which Mary B. Brown, administratrix of A. W. Brown, deceased, late in our circuit court of Rockingham county, has recovered against her as well for a certain debt as for interest thereon, which to the said in the same court were adjudged, whereof the said J. G. Brown's executrix is convict as appears to us of record, and that you have the same before the clerk of our said court, at the courthouse, on the first Monday in June next, to render unto the said Mary B. Brown, administratrix of A. W. Brown, deceased, of the debt, interest and costs aforesaid; and have then and there this writ.

Witness, L. W. Gambill, clerk of our said court, at the courthouse, the 2d day of April, 1875, and in the ninety-ninth year of the Commonwealth.

               L. W. GAMBILL, Clerk.


Endorsement—June 7th, 1875. No property found upon which to levy this execution. Garnishee summons executed on Joseph Byrd, Robert Black, George G. Grattan, and others, which was returned to the clerk's office of the circuit court of Rockingham county, Va.

               WM. H. BLAKEMORE,
            Deputy for D. H. Rolston, S. R. C.

And then proved by the plaintiff that the said writings, obligations in his declarations mentioned, were executed by the defendant to Milly Rice for one-half of the two notes of A. W. & J. G. Brown for $3,392.66 and $391.39 aforesaid, as stated in the receipt aforesaid; that he believed them to be valid and subsisting debts, and that he knew of no bar of the statute of limitations applying to them, and that he presented the said notes to Koogler, the brother, and, as he believed, the agent of said Mary B. Brown, and that he made no fraudulent representations, nor was he guilty of any fraudulent concealment of facts touching said transactions to said John R. Koogler, or to any other person; that the said Milly Rice had expressed her intention to give one-half of said two notes to her daughter, Mary Brown, the widow and executrix of said J. G. Brown, deceased, and proposed to take the bonds of defendant for the other half of said notes, and release the estate of A. W. Brown from the residue of said notes; and that he acted as the agent of said Milly Rice in carrying out the purpose of said Milly Rice so expressed; that he made a calculation of the amount then due upon said notes, and then handed the said notes and calculation to John R. Koogler, the brother of defendant, in Harrisonburg, Va., who afterwards had a calculation of the amount due on said notes made by said Wartmann, which was adopted by him (said Warren); that he drew up the two writings obligatory aforesaid, and handed them to said Koogler for defendant to sign; that he (said Warren) and Milly Rice lived in Harrisonburg, Va., and the defendant lived at Bridgewater, seven miles distant from Harrisonburg; that in a few days thereafter said Koogler returned the said two writings obligatory to the said Warren, with the signature of the defendant thereto; that the consideration given for the said two writings obligatory, in the plaintiff's declaration mentioned, was the one-half of said two notes of A. W. & J. G. Brown, and

the release or discharge from the other half; that the
plaintiff had not spoken to defendant about this matter
before nor at the time said writings obligatory were signed,
nor since that time, and had not shown said notes to her,
but handed them to said John R. Koogler in Harrisonburg,
when he got said Wartmann to make said calculation. It
was also proved by defendant's witnesses that J. G. Brown
died in 1857, A. W. Brown in October, 1861, and his son B.
S. Brown in 1868, and that Milly Rice died in 187–, and
William McK. Wartmann died in 187–; that said firm of
A. W. & J. G. Brown did business in Bridgewater, in this
county, seven miles from Harrisonburg. But the plaintiff
denied that he had made any fraudulent representation to
the defendant, as he had not spoken to her on the subject,
nor to said Koogler, to whom he handed said notes
and calculation, and there was no proof that said Milly
Rice had done so; that she was then a very old, helpless,
and infirm lady, and transacted all her business through
the plaintiff, who was her grandson; that the credits on the
two notes for interest paid down to February 16, 1861, are
in the handwriting of said A. W. Brown; that the credits
on said two notes dated December 16th, 1863, are in the
handwriting of Bernard S. Brown, who was one of the ad-
ministrators of A. W. Brown, deceased. And this being all
the evidence, the court, on motion of the plaintiff, gave the
jury six instructions, following:

1. Mere *inadequacy* of consideration will not avoid a bond.

2. Every bond imports a consideration, and want of con-
sideration is no defence to a bond.

3. The jury is confined in this case to the issues presented
by the pleas, and in this case the issues raised upon the
special pleas present for the consideration and determina-
tion of the jury the question whether or not Milly Rice,
the plaintiff's intestate, or W. R. Warren, her agent, was
guilty of fraud in the procurement of the bonds in suit,

either by fraudulent misrepresentations or by the *fraudulent* concealment of facts known to them, or either of them, of which the defendant was ignorant; that fraud must not be presumed without proof, but may be shown by the proof of facts and circumstances, which, though not amounting to direct and positive proof, are yet in the opinion of the jury sufficient to establish the existence of fraud.

4. The burden of proving the allegations of the pleas to be true is upon the defendant, and if she has failed to do so the jury must find for the plaintiff.

5. If the jury believe from the evidence that Milly Rice handed to William R. Warren the two notes mentioned in defendant's pleas, given by A. W. & J. G. Brown to Milly Rice, and that said Warren handed said notes to John R. Koogler, the brother and agent of defendant, Mary B. Brown, without any fraud or misrepresentation on the part of Milly Rice or her agent; that said Koogler, as agent for said defendant, had a calculation of the amount due on said notes made by William McK. Wartmann; that he returned said notes and calculation to said Warren, who drew the bonds sued on and handed them, together with the notes aforesaid, to be taken to said Mary B. Brown; that said Koogler afterwards returned said notes and the bonds signed and sealed by the defendant to said William R. Warren, the agent of Milly Rice, who, as agent, gave a receipt therefor, and delivered the same to said Koogler; these facts do not constitute a defence to the bonds sued on, and the jury should find for the plaintiff the amount of the bonds sued on.

6. The jury are instructed that the opinion of the court of appeals in the case of *Brown* v. *Rice*, in 26 Grattan, read to the jury in this cause, is *not evidence* in this cause, that opinion being based on the idea that it is necessary for the defendant to prove every material allegation of her pleas, and, if so proved, then that the pleas constitute a defence

to the action; but if not proved to be true by the defendant, are no defence to the action.

And the court, on motion of the defendant, gave to the jury the fourteen following instructions:

1. The jury are instructed that the note for $3,392.66, executed by the late firm of A. W. & J. G. Brown, to Milly Rice, on the 16th day of February, 1854, and not under seal, was barred by the statute of limitations at the end of five years from its date, as it was payable on demand, and that those five years expired on the 16th day of February, 1859. § 8, ch. 146, of Code.

2. The jury are further instructed that a note barred by the statute of limitations cannot be revived or kept in force against the maker of the note by payments made upon such notes, although such payments may be endorsed on the note by the maker of the note. § 10, ch. 146, of Code.

3. The jury are further instructed that a note barred by the statute of limitations can only be revived and put in force again against the maker of the note by a new promise or acknowledgment in writing, signed by him or his duly authorized agent, in which a promise to pay such note is made or from which a promise of payment may be implied. § 10, ch. 146, of Code.

4. The jury are further instructed that an administrator or executor cannot revive a debt against the estate which he represents, which is barred by the statute of limitations; and that if he gives his bond or note or other obligation to pay such debt so barred, he can claim no credit for it against the estate he represents, and cannot recover it from such estate. The liability and loss fall upon him alone. § 7, ch. 128, of Code.

5. The jury are further instructed that if they believe, from the evidence, that the said note of A. W. & J. G. Brown for $3,392.66, dated February 16th, 1854, and due on

demand, was barred by the statute of limitations on the 24th day of February, 1869, when the defendant gave her bond for the payment of one-half of said note, she cannot have recourse upon the estate of A. W. Brown for any money that she paid or may hereafter pay on her said bond, neither can she get credit therefor in her settlement of said estate, but the whole burden would fall upon her individually.

6. The jury are further instructed that if the two bonds or writings obligatory in the plaintiff's declaration mentioned were obtained from the defendant by Milly Rice, or her agent Wm. Rice Warren the plaintiff, by fraud, actual, implied, or constructive, they are null and void.

7. The jury are further instructed that if the two bonds or writings obligatory in the plaintiff's declaration mentioned were obtained from the defendant by Milly Rice, or her agent, Wm. Rice Warren, the plaintiff, by actual, implied or constructive *fraud*, but that the said fraud only applied to and embraced the said note of A. W. & J. G. Brown for $3,392.66, dated February 16th, 1864, and due on demand, then the said bonds or writing obligatory of the defendant are only null and void as to the note, and the fraud would not apply to one-half of the other note of said A. W. & J. G. Brown for $391.39, dated February 16th, 1857, and due on demand.

8. That the defendant is entitled to any defence in this case, raised by his pleas for which a court of equity could grant him relief, if this cause were now pending in a court of equity on the same issues.

9. The jury was further instructed that Milly Rice was bound by any representations made by William R. Warren as her agent, in person, or by and through any other person, to the defendant, by which the bonds in issue were obtained from the defendant, although the representations so made by said Warren or any other person, at his instance,

were false and unauthorized by Milly Rice, for she cannot adopt and take the benefit of a contract entered into by her agent and repudiate the fraud on which it was built. See Kerr on Fraud and Mistakes, pp. 111, 112, 113, and 7 Gratt. 353.

10. The jury are further instructed that a fraudulent misrepresentation of a material matter as an inducement to an act or contract by which the other party is actually misled to his injury, may be by deeds, words or acts, by artifice to mislead, as well as by assertion, and that it is immaterial whether the party thus misrepresenting a fact knew it to be false, or made the assertion without knowing it to be true or false; for the affirmation of what *one does not know,* is equally, in morals as in law, as unjustifiable as the affirmation of what is known to be positively false; and that, therefore, William R. Warren, acting as the agent of Milly Rice, represented the note of A. W. & J. G. Brown, for $3,392.66, dated February 16th, 1854, and due on demand, as a valid and subsisting debt against the estate of A. W. Brown in 1869, he having the note in his possession at that time, and the defendant was deceived and misled by said representations and thereby induced to give the bonds now in suit for one-half of that note, such representations by said Warren were fraudulent as to defendant, whether said Warren knew them to be false or not.

11. The jury are further instructed that to constitute a fraudulent representation, the representation need not be made in terms expressly stating the existence of some fact which does not exist. If a statement be made by a man in such terms as would naturally lead the person to whom it was made to suppose the existence of a certain state of facts, and if such statements be so made designedly and fraudulently, it is as much a fraudulent representation as if the statement of an untrue fact were made in express terms.

12. The jury are further instructed that if they believe from the evidence that William R. Warren, acting as the agent of Milly Rice, represented to the defendant in person, or by and through other parties or persons, that the said note of A. W. & J. G. Brown, for $3,392.66, dated February 16th, 1854, and due on demand, *was a valid and subsisting debt against her husband's estate,* and she was thereby induced to give the bond in suit, in whole or in part, for one-half that note, she is not precluded from setting up this defence, if the said note *did not constitute a valid and subsisting debt against said estate,* merely because she may or might have had access to further information, for she had a right to rely upon the representations of said Warren, in whose hands the note was, and he, as the agent of Milly Rice, and as plaintiff in this case, cannot complain that she relied too implicitly upon the truth of what he himself stated.

13. And that when the consideration is so grossly inade- ·quate and manifest as to shock the conscience, or cause an exclamation of surprise by a man of common sense, proof of fraud may be deduced, from such inadequacy of price, sufficiently strong to set aside the contract or agreement.

14. The jury are further instructed that the suggestion of a falsehood, or the suppression of the truth of a material fact that the other party has a right to know, is such a fraud as will render a contract so procured null and void.

Whereupon the jury retired to their chamber to consider of their verdict, and thereupon returned into court with the following verdict: ·

"We, the jury, find for the plaintiff $195.59, part of the debt in the declaration mentioned, with interest thereon from the 16th day of February, 1859, till paid."

And then the plaintiff moved the court to set aside said verdict and grant him a new trial, which motion was sustained by the court, and a new trial was accordingly granted; to which ruling of the court the defendant excepted, and

filed this his bill of exceptions, and prayed that the same be signed, sealed, and made part of the record, which was accordingly done.

MARK BIRD. [Seal.]

Defendant then filed two additional pleas, setting forth *mistake,* as well as fraud, in the procurement and execution of the bonds. At third trial, in March, 1879, evidence was the same as upon second trial, except that of plaintiff introduced by defendant to prove the identity of the papers— a fact provable by no other witness. Verdict for plaintiff for $2,391.55, the debt in the declaration demanded, with interest from 1st July, 1869, until paid. Defendant excepted to all instructions given on motion of plaintiff and at the court's own instance. During trial, defendant offered to read so much of the bill of exceptions taken at the second trial as certified the evidence of the plaintiff at that trial, in order to contradict the plaintiff's evidence at the last trial. This the court forbade. To which ruling defendant excepted, and filed her bill of exceptions, whereof it is necessary to give only so much as sets forth the evidence of the plaintiff at the last trial:

And the defendant introduced William R. Warren as a witness in her behalf, and the said William R. Warren testified, in answer to questions propounded by defendant's counsel, that shortly before the said bonds on which this suit is brought were executed to Milly Rice, the defendant, Mary B. Brown, came to his mother's home and had an interview with said Milly Rice, who lived at the said home of witness' mother, and that the witness at that time made a calculation of the amount of the old notes on A. W. & J. G. Brown, in the presence of the said Milly Rice and Mary B. Brown, and that the said old notes on A. W. & J. G. Brown for $3,392.66 and $391.39 were lying on the table in the room where all of said parties were at the time; that

said Mary B. Brown saw them, and the witness believed she had them in her hands and examined them, but was not positive that she did so, but was positive that she had every opportunity to examine them. That afterwards, and before said new bonds were executed, the said old notes on A. W. & J. G. Brown were delivered by the witness to John R. Koogler as the agent of Mary B. Brown; that said Koogler had them in his possession some time before the new bonds were executed, and got William McK. Wartmann, a commissioner in chancery, to make a calculation of the amount of said notes, and that the said Koogler returned said calculation to the witness; that witness, as agent for Milly Rice, drew up the two bonds sued on in this cause, and sent them or delivered them to said Koogler, to be signed by the defendant. That subsequent to this, the new bonds signed by the defendant were returned to the witness, as agent of Milly Rice, by Hon. John T. Harris, with a receipt in the handwriting of said John R. Koogler, which receipt was signed by said witness as agent for Milly Rice, and is the paper introduced by the defendant as evidence; that the witness never made any representations nor misrepresentations to any one in regard to said old notes on A. W. & J. G. Brown, but simply handed them to said Koogler as the agent of defendant. That the witness wrote the receipts on the back of the old notes on A. W. & J. G. Brown, and signed the same as agent for Milly Rice; that said Koogler was the brother of defendant, and was a business man, and had been high sheriff of the county; that there was no fraud nor mistake in the transaction, so far as the witness knew and believed, on the part of any one; that the witness had no conversation with defendant, so far as he recollected, either at the time he made the calculation at his mother's home or at any other time, and that the contract or agreement in regard to the execution of the new bonds and release of A. W. Brown's

estate on the old notes was made on that day at the
home of witness' mother, in Milly Rice's room, between
said Milly Rice and Mary B. Brown. This latter was in an-
swer to a question propounded by one of the jurors. The wit-
ness also proved that in August, 1869, the said Mary B. Brown
executed the two bonds of $800 and $1,000, payable to Charles
A. Brown and William R. Brown respectively, which are
endorsed as credits on the said bond for $1,900 sued on, but
that the said bonds were subsequently returned to the de-
fendant and the credit cancelled, as appears by the endorse-
ments made on said $1,900 bond, and that up to that time
no intimation was ever given of any defence to the bonds,
nor in fact was any ever given until the first suit was brought
in 1870; that he was living in Texas, but at Harrisonburg,
Va., on a visit at the time of the arrangement between
Milly Rice and defendant Mary B. Brown was made at his
mother's home; that he went to Texas before the war, and
thought the law then was that credits on a note took it out
of the statute of limitations, and knew no better until after
the first suit was brought in December, 1870; that he believed
none of the parties intended any fraud or improper con-
duct. It was also proven by Hon. John T. Harris, the de-
fendant's witness, that the credits endorsed on the old notes
on A. W. & J. G. Brown, up to the year 1861, were in the
handwriting of A. W. Brown; that the credits of Decem-
ber 10, 1863, on the note for $3,392.66, is in Bernard S. Brown's
handwriting, who was co-administrator with the defendant;
that the said B. S. Brown and his sister, Miss M. A. Brown,
were the only heirs of A. W. Brown; that the credit of
September 15, 1865, on said note for $3,392.66, is in John R.
Koogler's handwriting, and also the credits of November
24th, 1866, on the smaller note; that he never saw the
old notes on A. W. & J. G. Brown, and never asked to see
them, but that he supposed they were valid, subsisting
debts against the said A. W. Brown, although nothing was

said by either party on that point, and that no mention was made by any one of the statute of limitations, so far as he had any connection with the matter, and he did not think of the question; that he did not think the defendant Mary B. Brown was at Milly Rice's house before she came to his house, and did not think she was there on the same day she was at his house, but she spent the day at his house and might have been there after the interview between witness and said Warren, but he did not think she was on that day; that his whole connection with the matter was to ask W. R. Warren whether it was true that Milly Rice desired to make the arrangement, and that his conversation did not last more than a minute, and he returned to his home and told the defendant that Mrs. Milly Rice would make the arrangement, and advised her to do so, and afterwards he received the new bonds and the receipt in Koogler's handwriting, from said Koogler, with a request that he deliver said bonds to W. R. Warren, the agent of Milly Rice, and get his signature to the receipt; that he did so, and enclosed the receipt in an envelope directed to said John R. Koogler and left it at J. L. Sibert's store in Harrisonburg for said Koogler, and that this was all that he knew about the matter, except that William McK. Wartmann and John R. Koogler both died in 1871, after the institution of the first suit, and that the calculation endorsed "Calculation for J. R. Koogler," is in said Wartmann's handwriting.   The receipt signed by William R. Warren, agent for Milly Rice, is in said J. R. Koogler's handwriting, as well as the credit of September 15, 1865, on the note for $3,392.66 and the credit of November 24, 1866, on the small note for $391.39. Said Harris stated that when Mary B. Brown came to his house, she told him she had understood that Milly Rice desired to give one-half the notes on A. W. & J. G. Brown to her daughter, Mrs. J. G. Brown, and to take the note of Mary B. Brown for the

other half and release A. W. Brown's estate on the old notes, and requested witness to ascertain if it was true, and this is the reason why he went to the fence and conversed with W. R. Warren about the matter. Defendant then offered to introduce and read so much of the bill of exceptions taken in this cause at the last trial of this cause as certified the evidence of the plaintiff in this cause at that trial, in the words and figures following, to-wit: (See first bill of exceptions)—to contradict so much of plaintiff's evidence aforesaid on this trial as is designed to prove that defendant had seen or had had an opportunity to see the notes of A. W. & J. G. Brown at said Milly Rice's room, and that the agreement to divide said notes was then and there made by and between defendant and Milly Rice, defendant claiming that she was surprised by this new and additional evidence or statement of the plaintiff, whom she was obliged to call to prove the execution and identity of the papers aforesaid. But on motion of the plaintiff, the court excluded the reading of any portion of said bill of exceptions, to which ruling the defendant excepted, and prayed that this, her first bill of exceptions, taken in this cause upon this trial, be signed, sealed and made part of the record, which is accordingly done.

MARK BIRD. [Seal.]

Defendant also offered herself as a witness in her own behalf to prove what happened at the interview between Milly Rice and defendant, which is mentioned by plaintiff in his evidence. This the court also forbade. And defendant filed her bill of exceptions, which it is unnecessary to insert. During trial, on motion of defendant, the court gave twenty-three instructions, whereof fourteen have already been given; and, on motion of plaintiff, gave fourteen—refusing one—the tenth asked for by him. To the giving whereof defendant excepted and filed her third bill of exceptions, which is here inserted:

Be it remembered, that upon the trial of this cause, March, 1879, after all the facts were proved and all the procedings had that are set forth in the defendant's first and second bill of exceptions taken upon this trial of this cause, and which are made part hereof, and contain all the evidence in this cause offered by the plaintiff and the defendant and admitted at this trial, and after the argument of counsel had been heard, the defendant moved the court to instruct the jury as set forth in the following twenty-three instructions:

15. The jury are further instructed that if they believe *from the evidence* that the pleas filed by the defendant in this cause alleging *mistake* on the part of the defendant in the execution of the bonds in issue in this cause as set forth in said pleas are true, then they must find for the defendant.

16. The jury are further instructed that "mistake may be said to be some unintentional act, omission or error arising from unconsciousness, ignorance, forgetfulness, imposition, or misplaced confidence," and that there is mistake if a person, through ignorance, is induced to do a thing which he would not have done had he not been in error. And that if an agreement be entered into between two parties in *mutual mistake* as to their relative and respective rights, either of these parties is entitled to have it set aside. That if a person renews a note or bond, believing that he was liable on the original note or bond, when, in truth, he was not so liable on the old note or bond, it is such mistake as will entitle him to relief. And that a mistake about private rights will vitiate a contract whether the mistake existed as to one only or as to both of the contracting parties. Kerr on Frauds and Mistakes, pp. 396–417.

17. The jury are instructed that mistake may consist of misapprehensions of the law, or of their rights, by both parties, or it may be a misapprehension of the law, or of

his private rights, by one of the parties alone.   26 Gratt. 470–471.

18. The jury are instructed that if the mistake of law, or as to his private rights, be that of one party only to the transaction, though the other party was not aware of it, a court of equity may, under the peculiar circumstances of the case, grant relief.   But if it appear the mistake was induced or encouraged by the other party to the transaction, or was perceived by him and was taken advantage of by him, the court will be still more disposed to grant relief than in cases where it does not appear that he was aware of the mistake.   26 Gratt. 471.

19. The jury are instructed that if they believe, from the evidence, that the note of A. W. & J. G. Brown for $3,-392.66, dated 16th February, 1854, and due on demand, was barred by the statute of limitations in 1869, and that the defendant believed that it was not barred by the statute of limitations or was ignorant of that fact, and that she, by reason of that belief or that ignorance, gave the bonds in issue in this cause for one-half of that note, believing it to be a valid debt against her husband's estate, they, the jury, must find for the defendant, so far as that note entered into the bonds in issue in this case.

20. The jury are instructed that the ninteenth instruction is true and correct, whether the defendant executed the bond in issue by mistake or by reason of any actual or implied fraud, concealment, or misrepresentation by Milly Rice or her agent the plaintiff, William R. Warren.

21. The jury are instructed that where a party to a suit is called as a witness by an opposing party in the same cause, he may be contradicted by the party calling him.

22. The jury are instructed that if they believe from the evidence that the defendant was made to believe by any acts, conduct, representations, or concealments of the plaintiff as the agent of Milly Rice, that the note of A. W.

& J. G. Brown for $3,392.66, dated February 16, 1854, was in 1869 still a valid and subsisting debt against the estate of A. W. Brown, and that she was thereby induced to execute the bond in issue, the jury must find for the defendant, although they may believe that she might have had access to accurate information, for it was not incumbent on her to make further inquiry, and the plaintiff cannot complain because the defendant relied too implicitly on the truth of what he himself has done or stated.

23. If the jury believe from the evidence in this cause that Mary B. Brown, in executing the bonds sued upon, did not intend to bind herself personally, and that Milly Rice did not accept said bonds as the personal obligations of Mary B. Brown, but that said bonds were executed and accepted as evidence of indebtedness of A. W. Brown's estate to Milly Rice, then the jury must find for the defendant·

All of which instructions were accordingly given by the court. And thereupon the plaintiff moved the court to instruct the jury as follows, to wit:

### PLAINTIFF'S INSTRUCTIONS.

1st. If the jury believe, from the evidence, that the bonds sued on in this case were executed by the defendant Mary B. Brown to Milly Rice for one-half of the two notes of A. W. & J. G. Brown, and that before said Mary B. Brown executed said two bonds she went to see Milly Rice, and that Wm. R. Warren, the agent of Milly Rice, made a calculation of the amount of said two notes on A. W. & J. G. Brown, in the presence of said Mary B. Brown; that the notes on A. W. & J. G. Brown were lying on the table at the time in full view of said Mary B. Brown, and that she had an opportunity to see and examine them; that the said Mary B. Brown, on another occasion, consulted Judge Harris, as her friend and legal adviser, in regard to the propriety

of executing the bonds sued on; that said Harris advised her to do so; that John R. Koogler, the friend and brother of Mary B. Brown, took the two notes on A. W. & J. G. Brown to Wm. McK. Wartmann, a commissioner in chancery, and had him make a calculation of the amount of said notes; that said calculation was accepted as correct, and the said Wm. R. Warren, as the agent of Milly Rice, drew up the two bonds sued on and delivered them to John R. Koogler to be executed; that said John R. Koogler afterwards returned said bonds, signed by said Mary B. Brown, to said John T. Harris, with a receipt written by said John R. Koogler, and with instructions to deliver the said two bonds to W. R. Warren, the agent of Milly Rice, whenever he signed said receipt; that said receipt was signed by said Wm. R. Warren, agent for Milly Rice, and delivered back to said John T. Harris, and that said Harris delivered said two bonds to said Warren as agent for Milly Rice, and that subsequently the said Mary B. Brown executed two bonds, one payable to Charles A. Brown for $1,000, and one payable to Wm. R. Brown for $800, which were to be credited on the $1,900 bond sued on, and were so credited; and that afterwards—to wit: in September, 1870—said two bonds of $1,000 and $800 were delivered back to Mary B. Brown, or her counsel, G. W. Berlin, and the credits agreed to be erased; and that these are all the material facts which have been proven in the cause by the defendant in support of her pleas; then the defendant has failed to prove either of said pleas, and the jury should find a verdict for the whole amount of the bonds sued on.

2d. Neither fraud nor mistake is ever presumed, but must be proved by clear and satisfactory proof by the party who pleads or alleges it.

3d. *Mistake or ignorance of the law* cannot relieve a party from a contract or bond in a court of law. Therefore no ignorance of law or mistake of law can be considered by the jury as a defence in this case.

4th. The jury are further instructed that ignorance on the part of the defendant, as to whether the statute of limitations applied, the facts being known to the defendant, is ignorance of law and cannot be used as a defence in this case.

5th. The jury cannot presume that the bonds sued on were executed through any mistake on the part of either of the parties, Mary B. Brown or Milly Rice, in the absence of evidence to prove mistake.

6. The jury are not trying the question as to whether the old notes on A. W. & J. G. Brown were or were not barred by the statute of limitations, but are simply to say on their oaths whether the defendant has proved by clear and satisfactory proof that the bonds sued on were obtained from her by fraud or mistake of facts.

7. Though the jury may be of opinion that the defendant, Mary B. Brown, signed the bonds sued on as administratrix of A. W. Brown's estate, and intending to bind his estate, yet this fact does not enter into the question of mistake or fraud in this case, and cannot affect the right of the plaintiff to recover on said bonds.

8. Although the jury may believe that one of the notes given by A. W. & J. G. Brown was barred by the statute of limitations at the time the new notes were executed, yet the jury have no right to presume that Mary B. Brown was ignorant of that fact, and ignorance of the law on that subject cannot be ground of defence in this cause.

9. The fact that the plaintiff brought suit on the bonds in December, 1870, against Mary B. Brown as administratrix of A. W. Brown, deceased, and dismissed that case, cannot affect the question of the right of the plaintiff to recover in this action against Mary B. Brown.

10. The jury are instructed that this case is being tried in a court of law and is governed by the rules of law.

11. The jury have no right to presume that the defendant

Mary B. Brown was ignorant of the law; on the contrary, the presumption of the law is, *that everybody knows the law.*

12. The jury are further instructed that although Rice Warren may have been of the opinion at the time of the transaction that the note for $3,392.66 was not barred by the statute of limitations, and although said Warren may have believed that all parties to the transaction believed it was not barred, this does not constitute misrepresentation, or concealment, or mistake, such as can be relieved in this case, if Mrs. Brown *had access to the note, or an opportunity to examine it, and knew its date* and when it was due, or if it was placed in possession of her agent before the new bonds were given.

13. The jury are instructed that mistake of law or ignorance of law cannot be used as a defence in this action.

And subsequently the court, in answer to inquiries made by the jury, gave the thirty-seventh and thirty-eighth instructions to the jury as follows, to-wit:

37th. The jury are instructed that the issues they have been sworn to try in this case are two—one of fraud and the other of mistake; that in order to entitle the defendant to a verdict, the fraud or mistake must be clearly proved; that in deciding said issues the jury must be governed alone by the evidence—that is, the facts and circumstances bearing upon said issues proved in the cause, and must not be influenced by suspicion or conjecture. Before the jury can find that Milly Rice, the plaintiff's intestate, or the plaintiff, her agent, *was guilty of fraud,* they must be satisfied from the evidence that the said plaintiff and Milly Rice, or one of them, was *guilty of the fraudulent concealment or misrepresentation of some fact or facts which it was material for the defendant to know, and that she was induced by such fraudulent concealment or misrepresentation to execute the bonds in suit.*

38th. The mere fact that the old notes, or one of them,

were barred by the statute of limitations, is not of itself proof of fraud or mistake, but such fact may be considered in connection with any other fact proved in the cause, going to establish fraud or mistake, if any such facts exist.

All of which instructions, except the tenth, which was refused, were given by the court. But the defendant objected to the giving of said instructions upon the ground that they are illegal and incompatible with the instructions given to the jury on motion of the defendant. But the court overruled the objections of the defendant, to which ruling of the court the defendant excepts, and prays that this his bill of exceptions be signed, sealed and made part of the record, which is done accordingly.

MARK BIRD. [Seal.]

Defendant also moved for a new trial. Motion overruled; and she filed again a bill of exceptions, which incorporated the former bills. To the judgment setting aside the verdict on the motion of the plaintiff and granting a new trial, and to the judgment refusing to set aside the last verdict on the defendant's motion, she obtained a writ of error to this court.

The remaining facts are set forth in the opinion of the court.

*Berlin & Harnsberger,* for appellant, contended that the court below erred—

1. In setting aside the verdict and granting plaintiff a new trial. That verdict was sustained by the law and the evidence; and therefore a judgment should be rendered on the first verdict by the appellate court.

2. In refusing to permit defendant to testify in her own behalf, so far, at least, as to give an account of the interview between Milly Rice and herself, which plaintiff in his evidence describes.

3. In not permitting the evidence of the plaintiff, at the first trial, to be read at the last trial, so far as it contradicted his evidence at the last trial.

4. In giving the instructions asked for by the plaintiff, and the thirty-eighth instruction given at its own instance, so far as they conflict with those given on motion of the defendant, and so far as they tend to mislead and confuse the jury.

5. In not setting aside the last verdict of the jury and granting the defendant a new trial.

*G. G. Grattan* and *W. B. Compton,* for the appellees.

ANDERSON, J., delivered the opinion of the court.

There were two jury trials in this case. On the first trial the jury rendered a verdict for the defendant, which, upon motion of the plaintiff, was set aside and a new trial granted him. To this ruling of the court the defendant excepted, and the evidence was certified by the court.

Upon the second trial the verdict of the jury was for the plaintiff. And the defendant moved the court to set it aside, and to grant her a new trial, upon the ground that the verdict was contrary to law and the evidence, and also because the instructions given to the jury at the instance of the plaintiff, and those given in answer to inquiries made by the jury, were illegal and improper, and tended to mislead the jury, and went too far towards deciding the facts, instead of the law of the case. If there was no error in setting aside the first verdict and granting the plaintiff a new trial, I think there was error in overruling the defendant's motion to set aside the verdict on the second trial, and to grant her a new trial.

To understand the questions raised by the bills of exceptions, it is proper to state that the suit was an action of

debt, in the name of W. R. Warren, administrator *c. t. a.*, of Milly Rice, deceased, against Mary B. Brown, upon two bonds—one for $1,900, bearing date the 24th of February, 1869, payable one day after date, with interest from the 1st of July, 1869; the other for $491.55, of the same date, payable on or before the 1st of July, 1869. Both bonds are executed by Mary B. Brown, the plaintiff in error, "administratrix of A. W. Brown, deceased," and are made payable to Milly Rice, testatrix of defendant in error. Upon the first trial the defence relied upon two special pleas, which alleged in substance that the said Milly Rice held two notes of A. W. & J. G. Brown—one for $3,392.66, bearing date the 16th of February, 1854, and payable on demand, and the other for $391.39, bearing date the 16th day of February, 1857, and payable on demand; that the said A. W. & J. G. Brown were partners, and that said notes were executed by them in their firm-name as partners. That J. G. Brown died in 1857, and that A. W. Brown was liable as his survivor for the payment of said notes, and died in October, 1861, and administration of his estate was granted to his son, B. S. Brown, and the plaintiff in error, his widow; that the former acted as the sole administrator during his life, the latter taking no active part in the administration until after his death, which occurred in 1868; and that she executed the said bonds to the said Milly Rice for the one-half of the said notes which her deceased husband and J. G. Brown, as partners, had executed to the said Milly Rice, believing that they were valid subsisting debts, binding her husband's estate, the said notes being in the custody of the said Milly Rice, and had never been seen by her. Upon the fraudulent representation of the said Milly Rice, through her agent, W. R. Warren, now plaintiff in this suit as her administrator *c. t. a.*, that they were, and that by so doing she could release her husband's estate from its legal liability for the other

half of the debt, as the said Milly Rice proposed through her said agent that if she would execute her bonds as the administratrix of A. W. Brown for a moiety of said debts, she would release the estate of J. G. Brown from its liability for the other moiety, which she would give to the widow of J. G. Brown, deceased, by her will, who was a daughter of the said Milly Rice. And she avers that the said notes were not a subsisting valid debt against either J. G. Brown's or A. W. Brown's estate; but that the same were barred by the statute of limitations in the lifetime of J. G. Brown, and could not be revived against his estate, which was not liable therefor, or any part thereof, which fact was fraudulently concealed from the said Mary B. Brown, the defendant, and was not known to her when she executed her said bonds. But, on the contrary, she executed the said bonds in her character as administratrix, believing that her intestate's estate was liable for the whole of said debt, and would thereby be released from the one-half thereof.

Upon the second trial, the defendant relied upon two additional pleas, in which it is alleged that her said bonds were executed to the said Milly Rice for one-half of the two notes of A. W. & J. G. Brown aforesaid, through the mistake of both parties; that they were subsisting and valid debts against the estate of her intestate, A. W. Brown, deceased, and that his estate was legally liable for them; upon the promise and agreement of the said Milly Rice, that if she, the defendant, as administratrix of the said A. W. Brown, deceased, would execute her bonds for the one-half of the said notes, and the interest then in arrear and unpaid thereon, that she, the said Milly Rice, would release her intestate's estate from the other half thereof; when she, the defendant, averred that there in fact existed no liability whatever on her intestate's estate to pay the said note of $3,392.66, or any part thereof, but that the said

debt was barred by the statute of limitations in the lifetime of her intestate, and was thereby extinguished, and could not be revived against his estate.

The first instruction given for the plaintiff upon the second trial, undertakes to give a statement of the evidence in detail, and tells the jury that if they believe they are all the material facts proved by the defendant in the maintenance of her pleas, then she has failed to prove either of said pleas, and they should find a verdict for the whole amount of the bonds sued on.

This instruction seems to exclude any evidence which the plaintiff might have introduced which tended to prove the defendant's pleas, and to have restricted them to the evidence adduced by the defendant. And if there should be other evidence in the cause than that detailed, the question whether it is material or not, is referred to the jury. Indeed, the instruction seems to imply, or might have been so understood by the jury, that the evidence detailed was the only material evidence in the cause, upon which their verdict should be founded.

There were most material facts proved by the evidence as certified, which are not adverted to in the instruction— *i. e.*, that the note for \$3,392.66 was barred by the statute of limitations in the lifetime of the defendant's intestate, and that his estate was not liable therefor, or for any part thereof—the same being extinct and incapable of revival against his estate. (*Seig, Adm'r* v. *A'cord's Executor*, 21 Gratt. 369, 371). And that said bonds of defendant were executed by her, as administratrix of said intestate, for one-half of said notes of \$3,392.66 and \$361.39 by A. W. & J. G. Brown, and the interest which had accrued on said notes, which was in arrear and unpaid, and upon the consideration that the said Milly Rice would release defendant's intestate's estate from all liability for the other half of said notes, and for no other consideration whatever; all of which is

·ignored by said instruction. Also, the evidence which
tended to prove that said bonds were executed by the said
defendant, as administratrix of her intestate, through mis-
take, both by Milly Rice and her said agent, and by the
said defendant, that the estate of A. W. Brown was liable
for the said note of $3,392.66, when it was not so liable.

The said agent of Milly Rice, as appears from his own
testimony, was mistaken as to the liability of defendant's
intestate for the note of $3,392.66. He believed it was not
barred by the statute of limitations.

The proposition made through him that if the defend-
ant, as administratrix, would execute her bonds to Milly
Rice for the half of said notes, she would release her in-
testate's estate from its liability for the other half, was a
representation that there was a subsisting liability on her
intestate's estate for the whole debt. But it is further
shown by the endorsement on the notes of A. W. & J. G.
Brown by W. R. Warren, agent as aforesaid, and more fully
by his receipt for the bonds of the defendant aforesaid,
that he understood that there was a liability on the estate
of defendant's said intestate for both of said notes, and
that the defendant's said bonds were executed by her in
her character of administratrix, with the understanding of
both parties that there was a subsisting liability of the
estate of defendant's intestate for both notes, and that the
bonds in suit under that mistake were executed to relieve
said estate of such liability for one-half of said debt. But
no reference is made to this important evidence by the
court in detailing the evidence upon which the jury was
instructed they should find for the plaintiff. And in stating
that John T. Harris was her friend and legal adviser, and
that he advised her to execute the bonds, it omits to state
that the said Harris never saw the notes; and learning from
Warren that the aforesaid proposition had been made to
the defendant, no question was suggested to his mind as to

the subsisting liability of the defendant's intestate's estate, and he advised her to accept the proposition, and in the instruction this fact or circumstance is also left out of view. I am of opinion that the instruction in the form it was given was calculated to mislead the jury, and was improperly and erroneously given.

Plaintiff's 2d instruction. Whilst the court properly said to the jury that fraud or mistake must be clearly proved, it should have added that it may be proved by circumstances, as well as by direct proof.

Instruction 3. The instruction that no ignorance or mistake of law can be considered as a defence in this case, because the suit was in a court of law, is erroneous, because the defendant's defences were under equitable pleas, which in a court of law entitled her to the same relief she would have been entitled to in a court of equity.

Instructions 4th and 8th, so far as they conflict with defendant's instructions Nos. 17 and 18, are erroneous. 5th instruction expounds the law correctly as far as it goes. But it should have been added that the jury may deduce fraud or mistake from the facts and circumstances proved, if, in their opinion, such deduction is reasonable.

Instruction 6. The question whether the notes of A. W. & J. G. Brown were or were not barred by the statute of limitations in the lifetime of the defendant's intestate, was an important question involved in the pleadings, and was necessary to be decided by the jury, and had a direct bearing upon the question of fraud or mistake, and the instruction as given was calculated to mislead the jury.

Instruction 7. Whilst an obligor may be individually bound by his bond, though he executed it as administrator, yet the fact that he so executed it with the intention of binding the estate only which he represented, is a circumstance which, in connection with other facts and circumstances, may be properly considered by a jury upon the

question of fraud or mistake. I am of opinion, therefore, that this instruction in the form it was given, was not correct, and was restrictive of the defendant's rights as to the effect to which her evidence was entitled.

Instruction 9. That instruction was properly given.

Instruction 10 was properly refused by the court.

Instruction 11 is the law—though under the facts and proofs in this cause it is rather an enunciation of an abstract principle. Twelfth and thirteenth instructions are in conflict with the instructions given for the defendant— Nos. 12, 16, 17, 18, 19, 20 and 22. The twelfth instruction would have been valid, if the latter clause, all after the words " if Mrs. Brown had," were stricken out, and the following words were inserted, or substituted : " known that the estate of her intestate was not liable for said note, and that its liability could not be revived." It is not a question of diligence ; for the greatest diligence on her part in making inquiry could not have benefited Mrs. Rice, who could sustain no loss by her lack of diligence. It was a question of mistake—either of mutual mistake, or of the mistake of Mrs. Brown alone. Was the proposition made to her to execute the bonds by Mrs. Rice, or her agent, for one-half of the debt, in consideration whereof she would release her intestate's estate from the other half of the debt, under the mistaken belief of Mrs. Rice, or her agent, Warren, that the estate of Mrs. Brown's intestate was liable for the whole debt ? And was the proposition accepted by Mrs. Brown under the mistaken apprehension that her intestate's estate was liable for the whole debt, and that by giving her bond as administratrix, binding his estate for one-half the debt, she would relieve his estate of the other half, for which it was bound ? If so, she executed her bond under a mistake, and the mistake was mutual, and was a proper case for relief in equity. And if Mrs. Rice, or her agent, knew that Mrs. Brown's intestate's estate was

not liable, but proposed to relieve it from a liability which they knew did not exist, upon the consideration that Mrs. Brown would execute her bonds for half the debt, then, regarding the proposition itself as containing a false representation, it was a fraud upon Mrs. Brown, which a court of equity would relieve against. But if Mrs. Rice, or her agent, was not mistaken, the mistake was of Mrs. Brown alone, but her right to relief in equity would have been even stronger than if the mistake had been mutual.

It seems to me that the proposition from Mrs. Rice, to release Mrs. Brown's intestate's estate from liability for one-half the debt if she would execute her bonds as administratrix for the other half, was an unqualified and unequivocal representation that said estate was liable for the whole. If the asseveration had been made in express terms, it would not have been a more influential representation.

If the notes were on the table when Mrs. Brown was present, and when the aforesaid proposition was made to her by Mrs. Rice, and if Mrs. Brown's attention had been called to the notes, or she was aware that they were there, which does not appear (the witness, Warren, says he had no conversation with her); and although she was aware that she had access to them, and could examine them for herself, she did not think worth while to do so, confiding in the representation of Mrs. Rice, which was plainly implied in her proposition that the estate of her intestate was liable for the whole debt, which she received as true without question, as did her counsel and adviser, Mr. Harris, at another time, and by whose advice she acted upon it, it is not for Mrs. Rice, or her agent or personal representative, afterwards to object to Mrs. Brown's equitable relief against such mistake, upon the ground that she ought not to have acted upon their representations, but have investigated the matter for herself.

Nor can the circumstances or facts that the notes were

put by Warren in the hands of Koogler, who was the brother of Mrs. Brown, and that he had taken them to Wartmann to make a calculation of what was due on them; that Wartmann made the calculation, which was returned by Koogler to Warren, who adopted it, and prepared the bonds which he sent to Mrs. Brown by Koogler, which she executed, show that the said bonds were not executed by Mrs. Brown through mistake, from which she should be relieved by a court of equity. If Koogler had been the authorized agent of Mrs. Brown, of which there is no proof, what proof there is tends rather to show that he was selected by Warren to bear his messages to her, and that he was the agent of Warren rather than the agent of Mrs. Brown. But if he was the agent of Mrs. Brown, he was as liable to be mistaken as Warren himself was, or Mrs. Rice. It is evident that he never communicated to Mrs. Brown that her intestate's estate was not liable. If he had she would never have executed her bonds. It is most probable that she never inspected the notes, and it is remarkable that Wartmann, in his statement, describes them as "bonds," which she probably did see. And Mrs. Rice, in her will, describes them as "two certain *bonds*, executed by A. W. & J. G. Brown"; and again, "that portion of the A. W. & J. G. Brown *bonds* donated to Mary Brown," &c. The presumption is that when she made her proposition to Mary B. Brown, as testified by Warren, she spoke of them to her in the same way as *bonds*. And when Warren, in making known to Mr. John T. Harris, the counsel and adviser of Mary B. Brown, what was the proposition of Mrs. Rice, he did it in a way not even to suggest a thought in the astute mind of her counsellor that the estate of his friend's intestate was not liable for the debt, or any part of it, and he advised her to accept the proposition.

I perceive no substantial error in the 37th and 38th instructions given by the court to the jury, responsive to the inquiries made by them.

. The court gave the instructions tendered by the defend-- ant, to which I do not find that any exception was taken by the plaintiff.

I am of opinion that for the errors in the instructions given by the court, as pointed out, the verdict on the second trial ought to have been set aside and a new trial awarded the defendant; and upon the further ground that the defendant was evidently surprised by the testimony of the plaintiff, whom she had introduced as a witness. He was not, under the circumstances, a witness of her selection, but was the plaintiff in the suit and had an interest adverse to hers. His testimony on the first trial, as certified by the judge, was such as to induce her to introduce him as a witness on the second trial; and his testimony varying, as it does, so materially from what he testified on the first trial, was evidently a surprise to her. Although the certificate of the court of his testimony at the former trial was not legitimate evidence before the jury to discredit his testimony on the second trial, I think it was proper to be considered by the court upon the motion for a new trial upon the ground of surprise.

But I am of opinion that the court did err in setting aside the first verdict and granting the plaintiff a new trial. The jury rendered a verdict in favor of the plaintiff for $195.59, part of the debt in the declaration mentioned, with interest from the 16th of February, 1869, till paid, which, upon motion of the plaintiff, was set aside and a new trial awarded him. To which ruling of the court the defendant excepted, and her bill of exceptions was signed, sealed and made a part of the record, and all the evidence was certified by the court. If it appears from the evidence so certified that the verdict of the jury was warranted by it, the court erred in setting aside the verdict and granting a new trial to the plaintiff; and all the proceedings subsequent thereto were erroneous and should be set aside, and the appellate

·court may enter such judgment as should have been rendered by the circuit court.

I deem it unnecessary to review the testimony in detail, ·on the first trial, but will content myself with the remark that under the 6th, 7th, 10th, 11th, 12th and 14th instructions given by the court for the defendant, to which there · was no exception by the plaintiff, I cannot perceive how the verdict of the jury could have been different upon the evidence as certified. The evidence does not show actual ·or intentional fraud, yet the finding of the jury was warranted by the instructions before referred to.

The judgment is *de bonis propriis* against the defendant, the plaintiff in error, for $2,391.55, with interest from the 1st day of July, 1869, till paid. The record shows conclusively that she never intended to bind herself personally for that debt, and that she never received the consideration of one cent for it, and that in the execution of her bonds as administratrix, she had no thought of binding herself personally, but only the estate of her intestate, which she believed was bound for double the amount, and that she executed the bonds for the one-half to bind the estate upon the consideration that the estate would be released from the other half which she was induced erroneously to believe it was legally bound. Such was not only her mistake, but it is evident that it was so understood by the plaintiff's intestate, and her agent, who is the plaintiff, who first brought suit against her not *in personam*, but in her representative character, seeking only to bind her intestate's estate—which he dismissed, and afterwards brought this suit, to subject her personally to the payment of the debt, though in the transaction it was never understood by either party that she was to be personally liable. The record shows conclusively that it was the intention of both parties not to bind her personally, but only her intestate's estate, for a debt for which they mutually believed

it was legally bound, and that they were both mistaken in that belief. And it appearing now conclusively from the record that they were both mistaken, and that the defendant's intestate's estate was not bound for the debt, and that the demand of the plaintiff reaches beyond even anything that was intended by the parties, and seeks to bind the defendant personally for a debt of her intestate, for a debt for which he was not liable, it seems to me that the whole transaction was founded on mistake, and works an injustice against which equity should relieve.

As the case is presented by the whole record to the appellate court, I am of opinion that the defendant is not equitably liable to the estate of Milly Rice for more than the verdict of the jury, upon the first trial, awarded the plaintiff, which is a moiety of the note for $391.39, due from her intestate to the estate of Milly Rice, the other moiety having been bequeathed and released by her will to Mary Brown, the widow of J. G. Brown; and I am of opinion that justice will be attained by rendering judgment against the said defendant for the amount of the verdict of the jury in the first trial, and an end put to this protracted litigation. I am opinion, therefore, to reverse the judgment of the court setting aside the first verdict, and all the subsequent proceedings, and of rendering judgment thereon, as the circuit court ought to have done.

JUDGMENT REVERSED.