# Richmond.

## MOLLIE V. BELOTE AND PEYTON H. KILLMON V. COMMONWEALTH.

### January 18, 1923.

1. HOMICIDE—*Corpus Delicti—Evidence Sufficient to Establish Corpus Delicti.*—Deceased was found lying on the ground eight feet from a well in which a pistol was subsequently found. Two pieces of iron pipe were found near where deceased was lying and a man's footprints leading away from the pipe. Deceased's skull was fractured and there was a bullet hole in his head. It was physically impossible for deceased to give himself the blow with the blunt instrument, which fractured his skull, or to shoot the bullet into his head and then throw the pistol into the well.

   *Held:* That upon the foregoing facts there can be no doubt that the death of deceased was the result of the criminal agency of another.

2. INSTRUCTIONS—*Emphasizing Particular Facts.*—The court, as a rule, ought not to emphasize evidence tending to prove particular facts in the case, nor to stress the lack of evidence as to a particular fact.

3. HOMICIDE—*Instructions.—Refusal of Instruction as to Lack of Motive—Case at Bar.*—In the instant case, where accused were jointly indicted for homicide, there was ample evidence as to the motive of one of accused, wife of deceased, whose life was insured in her favor, and there was evidence that deceased was thought to have a large sum of money in his possession, and his pockets were turned wrong side out indicating that the motive of the perpetrator of the crime was to secure that money. Accused asked for an instruction, which was refused, "that the absence of all evidence of an inducing cause or motive to commit the crime when the fact is in reasonable doubt as to who committed it affords a strong presumption of innocence."

   *Held:* That the refusal to give this instruction was not error, as whether there was an absence of all evidence of an inducing cause or motive was a question for the jury, and there was ample evidence to sustain a finding that there was such a motive.

4. HOMICIDE—*New Trial—Evidence to Support Verdict—Case at Bar.*—In the instant case, a prosecution for homicide, although there was sharp conflict in the evidence, the evidence for the Commonwealth was sufficient to support a verdict of guilty of murder in the first degree, which was approved by the trial judge, and therefore must be affirmed on appeal.

· Error to a judgment of the Circuit Court of Accomac county.

*Affirmed.*

The opinion states the case.

*S. James Turlington, Benj. T. Gunter* and *Jeff F. Walter,* for the plaintiffs in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General,* and *Roy D. White,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

Mollie V. Belote and Peyton H. Killmon, the accused, were jointly indicted for the murder of Leonard W. Belote. This is a writ of error to a verdict and judgment convicting them of murder in the first degree and sentencing each of them to the penitentiary for twenty years.

[1] The accused rely upon three assignments of error; and as the basis of their first assignment contend the *corpus delicti* has not been proven as required by law.

On Saturday night, January 7, 1922, shortly after ten o'clock, Leonard W. Belote, husband of Mollie V. Belote, one of the accused, was found lying on the ground in his back yard, unconscious and nearly dead. Mrs. Belote was the first to find her husband and says she thought he had been paralyzed, until she reached him, when she decided he had been murdered.   Elwood Lewis and C. C. Downing, two of the first to arrive after Mrs. Belote and Peyton H. Killmon found the deceased lying on the ground bleeding freely from a mortal wound on his head, his pockets turned wrong

side out and some small change scattered on the ground near him. Fosque Watson saw the body, before it was moved, lying on the ground eight feet from the well in which the pistol was subsequently found. Jas. D. Scott heard loud talking and a pistol shot about ten o'clock from the direction of the home of the deceased; and he heard a woman scream "He's dead, He's dead." Dr. DeCormis, who attended the deceased soon after he was taken into the house, and on the following day made a post mortem examination, found the brains and blood oozing from a small bullet hole in his head, and a laceration of the scalp about the size of a half dollar at the edge of that hole; also "a bruise along his temple, which ran all the way back to the bursted place," and a ridge as wide and thicker than the doctor's two fingers. When the post mortem was held the doctor found that the skull was crushed in, and when he raised the scalp up one of the pieces of the skull came out with the skin. From the bullet hole, downward, and forward all the way across his head the skull was cracked, and there was a blood clot outside of the skull. Upon making an incision he found the fracture was made with some blunt instrument, and found lodged in the skull several pieces of the coating of a pistol bullet, like the coating on the cartridge in the pistol found in the well. Two pieces of iron pipe were found near where the deceased was lying, and a man's foot prints leading from the pipe in the direction of the railroad.

It was physically impossible for the deceased to give himself the blow which he had received from a blunt instrument, or to shoot the bullet into his head and then throw the pistol into the well, eight feet away.

Upon the foregoing facts, which appear in evidence, there can be no doubt that the death of Leonard W. Belote was the result of the criminal agency of another.

This assignment is without merit.

[2, 3] The second assignment is the action of the court in refusing to give the following instruction:

"The court instructs the jury that the absence of all evidence of an inducing cause or motive to commit the crime when the fact is in reasonable doubt as to who committed it affords a strong presumption of innocence."

The court, as a rule, ought not to emphasize evidence tending to prove particular facts in the case (*N. Y. P. & N.* v. *Thomas,* 92 Va. 606, 609, 24 S. E. 264) nor to stress the lack of evidence as to a particular fact. Whether there was an absence of all evidence of an inducing cause or motive was a question for the jury. There was ample evidence of motive as to Mrs. Belote. Her life was jointly insured with that of her husband for $10,000.00, in the reliance Life Insurance Company, payable to the survivor. She, therefore, was pecuniarily interested in his death. Peyton H. Killmon also knew that his grand-mother, Mrs. Jane Belote, was expecting to get $4,000.00 from the deceased on the day of the homicide. The fact that the deceased's pockets were turned wrong side out and some small change scattered on the ground shows the motive of the perpetrator of the crime was to secure money. The court did not err in refusing the instruction.

[4] The third and last assignment is to the court's refusal to set aside the verdict of the jury as without evidence to support it.

Viewed from the standpoint of the Commonwealth, the evidence upon material points warrants the following statement of facts, in addition to the facts stated in discussing the first assignment:

The home of Leonard W. Belote, the deceased, was located at Tasley station in Accomac county, fifty feet

from the right of way of the New York, Philadelphia and Norfolk railroad, on the west side thereof, and fronted on the county road, a distance of forty-five feet therefrom. Mr. Belote was last seen leaving the store of Ben Hurst, located just across the road from deceased's residence, about 9:15 p. m. on the night he was killed.

On January 7, 1922, at 1:26 p. m., Peyton H. Killmon, the accused, arrived at Tasley from his home at Parksley. At six o'clock he was at the Belote home enquiring for the deceased. A little later he saw Hamp Lewis and asked him if he had seen uncle Leonard, meaning the deceased. At 9:30 p. m. Killmon was seen coming hurriedly across the railroad, from the west side thereof, to the depot, where he met his wife who arrived on the train reaching Tasley at 9:31 that night. The point at which Killmon crossed the railroad is less than 100 feet from the Belote home. At ten o'clock John S. Wise, who was in the employ of the railroad company as water pumper and watcher of engines, left for his home and on the way passed the home of the deceased. As he approached the home of the latter, the house was dark and just as he passed the lights were flashed on and he saw Peyton H. Killmon come out of the house on the porch, accompanied by the accused, Mrs. Mollie V. Belote. The front door was slightly ajar and Mrs. Belote stood just inside the door and Killmon just outside and the two appeared to be engaged in a whispered conversation. The accused, Mrs. Belote, admits the lights had been turned off by her, as she says, to rest her eyes, but denies that the accused, Killmon, talked with her at the door.

Shortly after ten o'clock the same night, which was the night of the homicide, both James C. Scott and his wife heard the voice of a woman, which sounded like the voice of Mrs. Belote, the accused, speaking loudly,

in the direction of the house of the. deceased.    Quickly thereafter they heard a pistol shot, followed by the screams of the same woman who had been talking. After the shot was fired this voice screamed out, "He's dead, He's dead," and then said, "Go."    Scott's daughter, Mrs. Sterling, also heard the pistol shot and recognized the voice as the voice of Mrs. Belote, the accused.

Elwood Lewis, who lived about seventy yards from the residence of the deceased, on hearing the outcries made by Mrs. Belote, ran to her house and found the deceased lying on the ground and both of the accused, present, standing near him.    After Leonard W. Belote was taken into the house, Mrs. Belote, the accused, said in the presence of Fosque Watson and others, "Leonard came to his death by having money on him. He had between $4,000.00 and $4,050.00 on him which was paid to him by Martin Hall to be paid to my mother, Mrs. Jane Belote."    About the same time she made this statement, Mrs. Belote, one of the accused, said: "I struck at him twice and missed him."

Near where the deceased was lying was found an empty box, on which was the cost mark of Doman-Smythe Hardware Company, Salisbury, Maryland, in which had been a pistol, and nearby a circular with directions for using the pistol, but no pistol was seen anywhere near the box.    The bottom of the well near the place where the deceased was found was dragged several times on Sunday and Monday following the homicide, but nothing was found.    On Tuesday a well digger used his scoop in the well and brought up a pistol which was put in evidence at the trial.    When the pistol was shown to the accused, Killmon, he was asked whether that was the pistol found in the well and said: "I can tell by the number," and he looked at it and said, "that is the pistol."    He also said, when

Leroy Killmon handed him the pistol, "I saw the safety was on."

When the pistol was shown to Mrs. Belote, the accused, she remarked that if she didn't "get out of this" it would kill her.

The accused, Killmon, met John S. Wise, a Commonwealth's witness, about two weeks after the homicide and told him he understood Wise had made a statement, tending to implicate him in the murder, which was a lie, and added, "you are half dead now and if you fool with me I will send you in the house on a stretcher."

The accused, Mollie V. Belote, testified that her husband, the deceased, left the house about seven o'clock p. m. with the coal scuttle and said he was going to get a scuttle of coal, and as soon as he got it they would go over to her mother's; that he did not return and she sat in the house and read until about nine o'clock and then turned the lights off to rest her eyes, and that about fifteen minutes or more after the 9:30 train passed she turned the lights on and went out to get the coal and found her husband lying on the ground near the coal house, with the coal scuttle near his feet filled with coal. When she put her hand on his forehead, she said, "Oh, Leonard, is that you?" and began to scream, and that Peyton H. Killmon rushed up and said, "where is he, where is he?" And she said, "someone has killed your uncle Leonard." She denied that she said to Mrs. Ruth Wise, the next day, that if she did not "get out of this" it would kill her, and did not remember saying "I struck at him twice and missed him." She further testified that she did not hear a pistol shot that night.

The accused, Peyton H. Killmon, testifying as a witness for the defense, undertook to account for his movements after his arrival at Tasley until he met his wife

at the 9:30 p. m. train and took her to the home of his grandmother, Mrs. Jane Belote.    He claimed that he remained there until about ten minutes after ten, when he heard the screams of the accused, Mrs. Mollie V. Belote, and ran over to her house and found her alone near the body of her husband in the backyard.    He admits being at the home of the deceased at six o'clock but denies that John S. Wise saw him there in conversation with Mollie V. Belote about ten o'clock.

If the statement attributed to Mrs. Belote, the accused, that she "struck at him twice but missed him," and her order to "go" be true, she must have had a partner in the crime; and the presence of Killmon at the home of the deceased, in conference with Mrs. Belote, just before and at the body of the deceased just after the outcry was given points to him as the man.

While there are sharp conflicts in the evidence, we find nothing in it to support the defendants' theory of suicide or that points to any person other than the accused, as the perpetrator of the crime.

The jury saw and heard the witnesses testify and their finding on the facts is conclusive with us.    The verdict was supported by the evidence and approved by the trial judge, who also saw the demeanor of the witnesses, on the stand; and the judgment must be affirmed.

*Affirmed.*