# Richmond.

## MELVIN BROWN v. COMMONWEALTH.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*McC. G. Finnigan* and *B. Harrison Turnbull,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

Melvin Brown, the accused, was indicted for violating the prohibition law and the indictment contained two counts. The first count charged the accused with manufacturing distilled ardent spirits, while the second count charged him with the possession of two stills, caps and fermenters. When the evidence had been completed, the court instructed the jury that there was no evidence on which to base a conviction under the second count. The jury, after being instructed, returned a verdict finding the accused guilty under the first count and fixing his punishment at a fine of $5.00 and confinement in jail for six months. A motion was made to set aside the verdict for the following reasons: (a) Erroneous instructions given the jury; (b) because the court refused to give instruction "D" offered by the defendant; (c) overruling the objection of counsel for the accused to the improper argument of the Commonwealth's attorney; (d) in admitting certain objectionable evidence; (f) because it was contrary to the law and the evidence.

After taking time to consider the motion, the court overruled it and the case is here upon a writ of error to that action of the court.

A bill of particulars was furnished the accused wherein it was charged that on August 9, 1929, he assisted, aided and abetted William Crewe and William and Stanley Otey in the

manufacture of distilled ardent spirits. It was also charged that he knowingly carried food to these parties at a still in operation, where liquor was being manufactured.

The evidence, from the standpoint of the Commonwealth, discloses that on August 9th, J. C. Dillow, a prohibition officer, accompanied by R. J. Glasco, a special policeman of New Kent county, located a still in full operation in that county. William Otey was then operating the still, and in a few minutes Stanley and William Crewe came to the still. Stanley Otey ran away, but the others were arrested. After the officers had been at the still about ten minutes, the accused and William Johnson were seen coming directly towards the still, and when they had approached to a point thirty-five or forty yards from the still, the officers arrested them. They were armed with pistols, Johnson carrying his pistol concealed, while the accused carried his pistol unconcealed. The accused carried a bundle which contained food, and he stated to the officers that he was carrying the food to the men. William Johnson was carrying two empty jars in a sack.

The three operators of the still, testifying on behalf of the accused, stated that he had no interest in or connection with the still.

The accused, testifying in his own behalf, stated that on August 8th, the day prior to his arrest, he was in the vicinity of Anderson's mill and heard someone cutting wood in the direction of Clopton's land, and he thought it must be his friend, Lem Lewis, and in going in that direction he came to the still, which was being operated by the Oteys and Crewe. They told him to come back the next day and they would give him whiskey, as they had been directed by the "boss" to give whiskey to anyone who might come to the still. The next day he and William Johnson, who had been working with him, cutting wood, went over to the still to get the whiskey which had been promised. He carried the pistol because he did not care to leave it at home, where he had several small children who

might find it there and injure themselves. He usually left the pistol with a neighbor, but on this occasion he was not going in the direction of the neighbor's home, so he carried it with him. William Johnson brought a jar with him in a sack, and on the way they found another jar and placed it in the sack. Lem Lewis, a friend, asked him to carry a package to the boys, and he carried it under his arm. He did not look in the package and did not know what it contained, and when they approached the still, at seventy-five or one hundred yards distant, they were ordered by the officers to hold up their hands. The three operators of the still told the officers that they were the operators, and that he had nothing to do with it. He stated that he did not know the owner of the still, nor who operated it, and that he had no connection with it.

The only conflicting evidence in the case is: (1st) The discrepancy in the distance from the still to the point where the arrest was made (the officers testified that the distance was thirty-five or forty yards, while the accused testified that the distance was from seventy-five to one hundred yards); and (2nd) the accused said that he did not know what was in the bundle, while the officers testified that the accused admitted that he was carrying food to the men.

These two conflicting statements were placed before the jury. It is the province of a jury to determine the credibility of witnesses, their veracity and the weight to be given their testimony. The jury had the right to accept the version given by the officers and to discard the testimony of the accused and his witnesses in part, or in whole, and in reviewing this case the court must accept the conclusion of the jury in resolving the conflict upon the two disputed points against the accused.

Objection was made to the giving of instructions A, 1, 2 and 3.

Instruction A is as follows: "The court instructs the jury that there is no evidence * * * upon which to convict the de-

fendant under the second count * * * and that under * * * the indictment possession of the pistol * * * is not * * * a crime charged in the indictment."

As previously stated, the second count in the indictment charged the accused with the possession of a still. There being no evidence in the case supporting this charge, the court very properly instructed the jury that there could be no conviction under it. But the accused claims that, inasmuch as he was not being tried for carrying the pistol, all of the evidence regarding it was of no value in determining his guilt or innocence, under the present indictment, and that the instruction should have been amended and that evidence removed from the consideration of the jury. It was claimed that it only served to prejudice the jury. The evidence regarding the pistol was not introduced for the purpose of sustaining a charge of carrying firearms. Its sole purpose was to show the circumstances under which he was present at the still and of his arrest. Therefore, his contention that the instruction should have embodied a provision that such evidence was immaterial is without merit.

Instruction 1 follows section 20 of the prohibition law, and by it the jury was instructed that all persons found at a distillery, where ardent spirits are being manufactured, shall be deemed *prima facie* guilty of manufacturing. Instruction 2 states that the jury, under the indictment, could find the defendant guilty of aiding and abetting. Instruction 3 simply defined principals in the first and second degree.

Contention is made that while these three instructions properly define the law, they have no application to the evidence in the case, because the accused was not found at the still where ardent spirits were being manufactured, and that when he appeared on the scene the still could not have been in operation, unless the officers were operating it, for they had taken possession of it about ten minutes before he arrived, and for the same

reason he could not have been found guilty of aiding and abetting.

Instruction D was refused by the court and properly so. By it the jury would have been instructed that carrying food to the operators of a still was not sufficient to constitute aiding and abetting.

Under the prohibition law, Code, section 4675 (20), those found at a still in operation are presumed, *prima facie,* to be guilty of manufacturing. The accused, at the time of his arrest, was some thirty-five or forty yards from the still. He and his associate were carrying pistols, quart jars and food. The accused admits that he intended going to the still to obtain whiskey. We, therefore, conclude that he was present where a still was in operation, within the meaning of the statute.

The jury had the right to consider that the accused was carrying food to the operators of the still, along with the other evidence, in arriving at a verdict. It would have been manifestly improper to have singled out this one circumstance and called it to the attention of the jury, giving it binding effect, without any consideration of the reasonable inference that might be drawn therefrom, and without considering it in the light of all of the other circumstances. *New York, etc., Co.* v. *Thomas,* 92 Va. 606, 24 S. E. 264.

Objection is made to this statement of the Commonwealth's attorney in his argument to the jury: "What do you think Melvin Brown carried that great big gun for? He knew that he was going to this still, and he carried this gun so as to protect himself in case he should be caught."

We are of opinion that this comment, under the evidence in this case, was justified. From the standpoint of the Commonwealth, when the accused approached the still carrying a pistol, it was reasonable to argue that the pistol was to be used if anyone interfered and the opportunity presented itself.

This case is largely controlled by the recent case of *Langford* v. *Commonwealth,* 154 Va. 879, 153 S. E. 821, 824,

decided by this court on June 12, 1930. In that case Langford was approaching a still, and when he arrived at a point some twenty to thirty-five yards from it, he was arrested. It appeared that the still had been captured by the officers an hour before he arrived. One Camp had been arrested for operating the still. As Langford approached he whistled, and this signal was responded to by one of the officers. As he continued to approach the still, Camp attempted to let him know of the officers' presence by talking in a loud voice. The same argument was advanced in that case as has been advanced here, that is, that Langford was not found at a still in operation because the officers had already captured the still, and that he was not present at the still because he was arrested twenty to twenty-five yards from it. This court, in affirming the lower court, had this to say:

"Those found present at a still in operation are presumed to be guilty of manufacturing. Code, section 4675 (20); *Zimmerman* v. *Commonwealth*, 148 Va. 745, 138 S. E. 569. Of course, this presumption is rebuttable. When it is overborne, it is usually a question for the jury. Langford, at the time of his arrest, was only twenty or twenty-five yards from the still and coming directly towards it.

"We think that he was present within the purview of the statute, nor was it necessary that he should have actually been present on that particular day. Any day within the twelve months preceding his indictment was sufficient. *Widgeon* v. *Commonwealth,* 142 Va. 658, 128 S. E. 459.

"The jury did not accept the evidence of the defendant, of his father, or of Camp, and they were not obliged to accept it, even when uncontradicted. *Clopton's Case,* 109 Va. 813, 63 S. E. 1022; *Boggs* v. *Commonwealth,* 153 Va. 828, 149 S. E. 445, and authorities there cited."

In addition to the *prima facie* presumption that the accused was guilty of manufacturing ardent spirits, which had been created by section 20 of the prohibition statute because of his

presence at the still in operation, we find that he was carrying a pistol, food to the operators, and his companion carrying fruit jars. These circumstances, and the presumption taken together, are sufficient to sustain the verdict.

*Affirmed.*

EPES and HUDGINS, JJ., concur in result.