## COMMONWEALTH *vs.* JOHN BEZKO.

### SAME *vs.* SAME.

Hampshire.     October 3, 1932. — October 25, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Intoxicating Liquor. Nuisance. Evidence,* Inference, Competency, Of reputation.

At the trial together of complaints charging the defendant with keeping intoxicating liquors with intent to sell them unlawfully and with maintaining a liquor nuisance, there was evidence that, upon a search of the defendant's premises by police officers, there were discovered there intoxicating liquor, hot alcohol mash and sundry appliances for the preparation and bottling of liquor. *Held,* that

(1) There having been testimony that a certain motor vehicle was driven into the yard of the defendant's premises on three occasions between the time of the search and early the next morning, a police officer, a witness for the Commonwealth, who had testified that he knew the operator's general reputation in the community "for compliance with the liquor laws . . . [or] his reputation for liquor traffic," properly was permitted to testify that the operator handled liquor and transported it and that that was his general reputation: such testimony was relevant in the circumstances upon the issue of the defendant's guilt of the offences charged;

(2) It was proper to admit testimony by a police officer that he saw drinking men going in and out of the defendant's house during the period set forth in the complaint charging the maintenance of a nuisance, the witness also testifying that he knew the habits of these men as to sobriety;

(3) There having been evidence that liquor was found hidden under a partition in the defendant's barn, it was proper to instruct the jury that they might infer from such testimony that such liquor was kept with an unlawful intent;

(4) The evidence warranted a finding of guilty on each complaint.

Two COMPLAINTS, received and sworn to in the District Court of Hampshire on June 20, 1931, described in the opinion.

Upon appeal to the Superior Court, the complaints were tried together before *Hobson*, J., a judge of a district court sitting in the Superior Court under statutory provisions. Material evidence is stated in the opinion.

The portion of the judge's charge referred to in the opinions was as follows: "You have heard the evidence of . . . [a certain police officer] as to where he found the glass jug in the barn. . . . He found it, as he said, in the horse stall under a loose partition. Do you believe the testimony? Do you find that to be so? Do you find that the liquor was hidden or concealed? If you find that it wasn't hidden or wasn't concealed, then you can't draw the inference that I am going to speak about in just a moment, but if you find that there was a hiding or concealment of this liquor on the part of the defendant, then that is for you to consider in determining just what the intent of the defendant was in keeping it. The law permits the jury to draw, if they want to, from the fact that liquor was hidden or concealed or destroyed or attempted to be destroyed — of course there is no destruction here in this case — but the law permits a jury to draw the inference, if the jury feels that it is proper for them so to do, that the intent with which the liquor was kept was an unlawful one. Again the law does not say you must draw that inference. The law leaves it to your conscience and your judgment to draw such an inference if you feel you ought to."

The defendant was found guilty on each complaint and alleged exceptions.

The case was submitted on briefs.

*J. P. Dowling*, for the defendant.

*J. T. Bartlett*, District Attorney, for the Commonwealth.

CROSBY, J. The defendant was tried on two complaints, one for keeping intoxicating liquors with intent to sell contrary to law, the other for maintaining a liquor nuisance. There was evidence that the defendant with his family lived on a small farm in Hatfield, and raised tobacco and

onions. When the police officers searched the defendant's house and barn by virtue of a search warrant neither the defendant nor his family was on the premises. In the cellar of the house the officers seized a case of quart bottles of beer and another bottle half filled. The beer was shown by analysis to contain three and twenty-nine hundredths per cent of alcohol. The officers also found in the cellar a still full of alcohol mash which was hot and contained two and twenty-five hundredths per cent of alcohol. A bottle capper and alcohol tester were found on the stairs, and in a cupboard in the kitchen there were many corks and caps. In a partition in the barn a gallon of liquor containing twenty-nine and twenty-six hundredths per cent of alcohol was discovered.

1. One of the officers testified that he remained on the premises until 5:30 o'clock the next morning and during that time two motor vehicles were driven into the yard; that one of them came there on three occasions and was operated by one Mikaliewicz. One of the officers who participated in the raid was called as a witness by the Commonwealth and asked in substance if he knew Mikaliewicz's general reputation in the community "for compliance with the liquor laws or anything in regard to his reputation for liquor traffic?" The answer was in the affirmative. The witness was then permitted to testify, subject to the defendant's exception, that Mikaliewicz handled liquor and transported it, and that that was his general reputation. We are of opinion that this evidence was admissible. Since the adoption of the Eighteenth Amendment to the Federal Constitution and the act of Congress known as the Volstead act it is common knowledge that intoxicating liquor is sold unlawfully and at times delivered to the buyer by men who are known as "bootleggers." If this evidence were believed, the jury could have found that Mikaliewicz was illegally engaged in handling and transporting intoxicating liquor. This evidence and the other evidence adduced had a tendency to show that the defendant was guilty of the charges set forth in the complaints.

The statement in the opinion in *Warner* v. *Brooks*, 14 Gray, 107, at page 108, that "The occupation of the defendant could not be proved to be that of selling intoxicating liquors, by evidence that he was reputed to deal in them" is not pertinent to the facts in the present case. The action there was brought to recover on a promissory note. One of the defences set up in the answer was that the consideration for the note was intoxicating liquors, and that the plaintiff knew such to be the fact. This court said: "But that was not the purpose for which the evidence was offered, as the bill of exceptions states. It was offered, not upon any question of notice or knowledge, but as direct evidence of the fact of which such reputation existed, and was rightly rejected." The soundness of the decision in that case cannot be doubted, but it is not relevant to the facts here, where the defendant is charged with criminal offences, to prove which it may be reasonably inferred that if Mikaliewicz had a general reputation in the community for handling and transporting intoxicating liquor the defendant was guilty of the crimes charged. If the jury found that a man who illegally sells and transports liquor makes three visits in one night to the house of one charged with illegally keeping intoxicating liquor for sale, it may rationally be inferred that he went there either for delivery of liquor for sales to the defendant's customers, or for the purpose of purchasing liquor from the defendant, especially in view of the fact that a still on the defendant's premises was full of mash which was hot and steaming.

2. The testimony of the police officer that he saw drinking men going in and out of the defendant's house during the period set forth in the complaint charging a common nuisance was admitted subject to the defendant's exception. This witness testified that he knew the habits of these men for sobriety. The exception to the admission of this testimony must be overruled. If the jury found that the defendant's house was resorted to by drinking men that fact would be evidence tending to show it was a place where intoxicating liquor could be purchased. *Common-*

*wealth* v. *Helfman,* 258 Mass. 410, 415.    *Commonwealth* v. *Fomuck,* 261 Mass. 292, 293.

3. There was evidence that liquor was hidden under a partition in the barn.   It was for the jury to determine whether or not the liquor was so concealed with the intent to sell it.   The instructions to the jury with reference to this evidence were correct.   *Commonwealth* v. *D'Amico,* 254 Mass. 512, 515.   *Commonwealth* v. *Helfman,* 258 Mass. 410, 415.

4. It is obvious from the evidence respecting the presence in the house of the bottle caps, capping machine, alcohol tester, the still, and the liquor hidden in the barn and the other evidence, that the motions for directed verdicts for the defendant were rightly denied.   *Commonwealth* v. *Kozlowsky,* 243 Mass. 538.   *Commonwealth* v. *Zaidon,* 253 Mass. 600.   The defendant's exceptions to the admission of evidence for the reasons already stated show no error.

*Exceptions overruled.*