# Richmond

WALTER H. WOODS V. COMMONWEALTH OF VIRGINIA.

November 21, 1938.

Record No. 2011.

Present, All the Justices.

The opinion states the case.

*Philip M. Flanagan,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the verdict and judgment convicting the accused of maintaining a common nuisance in violation of section 4675 (55) of the Code.

The first assignment of error is to the action of the court in refusing to strike the evidence from the consideration of the jury.

A synopsis of the evidence relied upon by the Commonwealth is as follows:

(1) When officers appeared at the door of the accused's home in Bristol, his wife saw them through the glass door and rushed back to the kitchen. The officers forced an entrance, and one followed her into the kitchen where the arrival of the officers seems to have caused some confusion. There was an odor of whiskey in the kitchen sink, in two cooking vessels which were in the sink, in two glass jugs, and on the clothes of the accused. Four men were at a table eating, and one, Dowell, was intoxicated.

(2) A search of the kitchen revealed one full pint Briar Cliff, dated 3-3-38, ½ quart Windsor, dated 3-3-38, and 2/3 pint Briar Cliff, dated 3-3-38. To each of these bottles of whiskey there was attached a revenue stamp. In addition, the officers found in the kitchen 6 dram glasses, 13 empty half pint bottles, with Cream of Kentucky labels, 54 empty pint bottles, with stamps, and in the attic they found 75 empty whiskey bottles of various sizes and shapes.

(3) Witnesses living in the neighborhood testified that men and women, at different times of the day and night, had been seen going to and from the premises. Sometimes they would enter the house one at a time, and at other times several persons would enter together. The length of time they stayed in the home of the accused varied. Most of them, however, remained only a few minutes. One or more persons were seen to enter the premises sober and leave apparently intoxicated. Sometimes the people who went into the home seemed intoxicated when they entered, and were apparently the same way when they left. Different persons were seen to leave the premises with a package about the size of a paper bag. People went to the premises walking, in automobiles, and occasionally in taxicabs. None of the visitors were identified.

The defendant testified that he was regularly employed by a manufacturing plant in Bristol earning from $17.50 to $20.00 a week; that he was an habitual user of alcoholic beverages and frequently served them to his guests and visitors; that before the officers arrived he had taken a drink of legal whiskey, but he denied that there was any odor of whiskey in the cooking vessels, about his clothes, or in the jugs. He further stated that Dowell came to his home in an intoxicated condition, and that no alcoholic beverages were sold to him there; that frequently visitors to his home brought legal whiskey with them, and if the containers were emptied the bottles would be left in the home; but he did not allow illegal whiskey in his home, and he never sold any whiskey, with or without a stamp. This testimony was corroborated by several other parties who were in a position to see and know what transpired in the home.

While the evidence tending to establish the guilt of the accused is circumstantial, considered as a whole we think it is sufficient to sustain a verdict of guilty.

The only other material assignment of error is in the refusal of the court to give Instruction 3-D as offered by the accused. This instruction informed the jury of the necessary elements to complete the offense defined in section 55 of the Alcoholic Beverage Control Act, Code 1936, section 4675(55), and concluded with a statement that the burden was on the Commonwealth to prove each element beyond a reasonable doubt before the accused could be convicted. The court, over the objection of the accused, amended the instruction by adding the following: "If the jury believe from the evidence beyond a reasonable doubt that the house in question was resorted to by drinking men that fact would be evidence for the consideration of the jury as tending to show that it was a place where intoxicating liquor could be purchased, and if you believe from all of the evidence beyond a reasonable doubt that liquor whether legal or illegal was sold to customers there, the offense of maintaining a nuisance would be complete."

The Commonwealth cites *Commonwealth* v. *Bezko,* 280 Mass. 435, 182 N. E. 639, 83 A. L. R. 1398, as authority to sustain the amendment. It is true that a Massachusetts court did use practically the same language set forth in the first part of the instruction, but the Massachusetts court was discussing the admissibility of the evidence and not the weight to be given it by the jury. The Massachusetts case was decided in 1932, before the repeal of the Eighteenth Amendment, U. S. C. A. Const. Amend. 18, and before the enactment of the Alcoholic Beverage Control Act in Virginia, Code 1936, section 4675 (1) *et seq.,* wherein common nuisances were defined.

██ The term "drinking men," as used in the instruction, is too indefinite and uncertain to be of substantial aid to the jury. The mere fact that a person who takes an occasional drink frequents a place, or "resorts" to another's home, standing alone, does not establish the fact that intoxicating liquors are illegally sold at such place. To hold otherwise would cast serious reflection upon a large number of citizens who, according to the official report, purchased, during the last fiscal year, from the Alcoholic Beverage Control Board intoxicating liquors valued at $17,788,326. In the opinion of some good citizens, any person who takes a drink is a drinking man; in the opinion of others, no person is considered a drinking man unless he habitually drinks to excess. There is no yardstick by which the jury could determine with any degree of accuracy what was meant by the term "drinking men," as used in the amendment to the instruction.

██ The evidence for the Commonwealth was that the home of the accused was visited at various times by men and women, that some entered the home sober and left it drunk, others were intoxicated when they came, and left in an intoxicated condition. Some left carrying small packages. This class of evidence is admissible and was a circumstance to be considered, but it was only one of many circumstances to be considered by the jury in determining the guilt of the accused. We have repeatedly held that it is reversible error

for a trial judge to single out for emphasis a part of the evidence tending to establish a particular fact.

In *New York, etc., R. Co.* v. *Thomas,* 92 Va. 606, 609, 24 S. E. 264, 265, we said: "Calling the special attention of the jury to a part only of the evidence and the particular fact or facts it may tend to prove, and ignoring the residue of the evidence and the facts it may tend to prove, gives undue prominence to such recited evidence, and disposes the jury to regard it and the fact it tends to prove as the particular evidence, and the fact to be relied on in determining the issue before them, and thus misleads them.

"Instructions in writing are carried by the jury to their room when they retire to consider of the verdict, and, if they contain a rehearsal of a part only of the evidence, their tendency is to impress unduly on the jury such part of the evidence, to the disadvantage of the other evidence in the case, which may be equally or more important in determining the issue, but rests only in the memory of the jury." To the same effect see *Brown* v. *Commonwealth,* 156 Va. 947, 953, 157 S. E. 567; *Diamond Cab Company* v. *Jones,* 162 Va. 412, 416, 174 S. E. 675; *Southern R. Co.* v. *Baptist,* 114 Va. 723, 731, 77 S. E. 477; *Norfolk Hosiery & Underwear Mills* v. *Aetna Hosiery Co.,* 124 Va. 221, 236, 98 S. E. 43; *Belote* v. *Commonwealth,* 135 Va. 468, 471, 115 S. E. 520; *Clinchfield Coal Corp.* v. *Compton,* 148 Va. 437, 443, 139 S. E. 308, 55 A. L. R. 1376; *Oliver* v. *Commonwealth,* 151 Va. 533, 544, 145 S. E. 307.

In *Gottlieb* v. *Commonwealth,* 126 Va. 807, 101 S. E. 872, 874, this is said: "It is fundamental that the court must respond to questions of law and the jury to questions of fact; the court decides on the admissibility of evidence, that being a question of law, but not as to its weight after it is admitted, that being a question of fact."

For the reasons stated, the verdict of the jury is set aside, the judgment reversed, and the case is remanded for another trial, if the Commonwealth be so advised.

*Reversed and remanded.*