# Staunton

## JAMES WILLIAMS v. COMMONWEALTH OF VIRGINIA.

September 7, 1949.

Record No. 3557.

Present, All the Justices.

The opinion states the case.

*Broudy & Broudy* and *Savory E. Amato*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

Eggleston, J., delivered the opinion of the court,

On this writ of error we are asked to review a judgment entered upon a jury's verdict finding James Williams guilty of the charge of bribing two officers of the police force of the city of Norfolk.

A consideration of the evidence stated in the light of the verdict will show its sufficiency to sustain the finding.

Williams, the accused, operates a restaurant on Monticello avenue, in the city of Norfolk. In May, 1944, he was convicted in the United States District Court at Norfolk on the charge of operating an illicit distillery, and at the time of the occurrences hereinafter related was under suspicion by both the federal and state authorities of being engaged in the illicit sale and transportation of liquor.

On August 20, 1948, while Williams, accompanied by another man, was driving an automobile along Chapel street, in the city of Norfolk, he was stopped by H. L. Stovall and B. E. Fallin, members of the Norfolk police department. Williams and his companion were taken to the second precinct police station, and although no search warrant had been procured for the purpose, the car was searched. Since no contraband liquor was found in the car, and no violation of the law had been observed, both Williams and his companion were released without a charge being placed against either of them.

While Williams was being detained at the police station he stated to Fallin that he "would like to know how he could get straight" with Fallin and his companion officer, Stovall, that he would like to pay them off. Stovall was not present at this initial conversation but came up shortly thereafter and Williams made him a similar proposition. According to Stovall, Williams "asked me could he make it right with us officers to leave his cars alone, that we were worrying him to death stopping his cars, stopping

cars known to belong to him, and checking up the drivers' licenses, registrations," etc.

Williams admits that he approached and discussed with the two officers his desire to buy his peace, but says that he proposed to pay them to refrain from searching his cars without search warrants and to abstain from frequently interfering with him when he had committed no crime.

At any rate, Stovall suggested that it would be improper to discuss the subject while he was "in uniform" and on duty. Consequently, Williams made an engagement with the two officers for the purpose of further discussing the matater later during that afternoon. When the parties met pursuant to this engagement, according to Stovall this occurred:

Stovall inquired of Williams: "What is your proposition?" to which Williams replied: "Well, I want to get right with you men. You all are worrying me to death. It is cheaper to try to pay you something than it is to always be paying fines for no drivers' permits, improper hand signals, and disregarding signs, and so forth, and being tied up in court all the time like that." Stovall asked: "Well, what do you want to do?" Williams said: "I will pay you $10 now, $5 a piece, and you come back every Friday around this time and get $5 more a piece." Both officers agreed to this proposition.

Stovall then asked Williams: "Well, as long as we are on your payroll, what are your cars, what cars do you run through here, so we won't be stopping them? We have got to know that." Williams replied that he was operating a Mercury and a Buick, and that they were the only cars which he was then "running." Stovall then inquired of Williams: "Where are you hauling whiskey from, James?" Williams replied: "I am not dumping it in the city. I am doing all of that transactions (*sic*) in the county and bringing it into the city in smaller quantities."

After this conversation Williams dropped a $10 bill on the seat of the car between the two officers and was promptly placed under arrest upon the charge of bribery.

This testimony of Stovall was substantially corroborated by that of Fallin.

While Williams also admitted this latter interview, and the payment of the money to the officers, he insisted that he made it plain to them that this was for the purpose of having them refrain from searching his cars without search warrants, and, as he put it, from "riding me when I ain't done anything."

The Commonwealth also proved that in November, 1947, and in June, 1948, automobiles owned by Williams had been seized by the federal government for the illegal transportation of liquor. The accused admitted on cross-examination that he had been convicted in 1944 in the local federal court for the illegal operation of a still.

No question of entrapment is here involved. The accused admits that he first approached the officers for the purpose of buying immunity from their interference. Under the instructions granted the controlling issue was his motive in doing so.

At the request of the accused the court gave two instructions in which the jury were told that "it is not within the official capacity of a police officer to arrest, detain, or restrain the liberty of a citizen, except upon reasonable suspicion of his commission of a felony, or unless such citizen has committed a misdemeanor in the presence of a police officer;" that "it is not within the official capacity of a police officer to search a vehicle on suspicion that whiskey is being illegally transported therein, unless and until he first obtains a legal search warrant for such purpose;" and that if the jury believed from the evidence that the accused had given the money to the officers to induce them to abstain from such activities, it did not constitute bribery and he would be entitled to an acquittal.

We need not stop to consider the argument of the Attorney General that these instructions went too far in favor of the accused, for the latter, of course, cannot take advantage of the error, if any, in his favor.

The purpose and effect of these instructions was to submit

the case to the jury on the theory of the accused as based on his own testimony. The verdict demonstrates that the jury rejected that theory and testimony.

The evidence on behalf of the Commonwealth was sufficient to warrant the finding that the motive of the accused was not merely to buy his peace from what he says was the illegal search of his cars and the unlawful interference with his liberty, but to induce the officers to abstain from interfering with his unlawful transportation of liquor.

Evidence of the seizure of the two cars owned by the accused by the federal authorities shortly prior to the occurrence with which we are immediately concerned was admissible. Coupled with Stovall's testimony that Williams admitted on the occasion of the "pay-off" that he was engaged in the illegal transportation of liquor, it tended to establish the more serious motive of the accused under the Commonwealth's theory in offering the gratuity to the officers.

The assignment of error particularly stressed in the oral argument before us is to the action of the lower court in granting on the motion of the Commonwealth this instruction:

"The court instructs the jury if they believe from the evidence beyond a reasonable doubt that the accused offered money to the police officers as charged in the indictment, the testimony given by the several witnesses introduced by the Commonwealth relative to the seizure of the Buick automobile during November, 1947, and the Ford automobile during June, 1948, may be considered by the jury together with all of the other eivdence in the case to determine the motive, if any, which the accused may have had to offer money to the police officers but shall not be considered for any other purpose."

The argument is that this instruction improperly singled out for emphasis a part of the evidence—the seizure of the cars—"as tending to establish a particular fact—the accused's motive."

It is true that we have frequently said that an instruction should not "single out for emphasis a part of the evidence tending to establish a particular fact." *Woods* v. *Commonwealth*, 171 Va. 543, 547, 548, 199 S. E. 465, 467, and cases there cited.

But the instruction here does not violate that principle. The evidence of the seizure of the cars, as we have pointed out, was admissible to establish the motive of the accused. However, it tended to show that the accused had committed other illegal acts, in that he had engaged in the illegal transportation of liquor. In the absence of a cautionary instruction to the contrary, the jury might have concluded that evidence that the accused had committed other illegal acts tended to show that he had committed the particular offense with which he was charged under the present indictment. The instruction was given to inform the jury of the proper and only purpose for which the evidence should be considered. Ordinarily, the request for such an instruction comes from the accused, but the fact that it was given on the motion of the Commonwealth did not render it improper.

In establishing the fact that the federal authorities had seized an automobile owned by the accused in June, 1948, the Commonwealth relied on the testimony of F. H. Nolte, an investigator for the Federal Alcoholic Tax Unit. Nolte testified that although the automobile was registered in the name of "Moses Williams," and that a note evidencing the unpaid portion of the purchase price therefor had been signed in that name, the accused, James Williams, admitted that he was the owner of the car and that he had actually signed the note. In relating his conversation with the accused, Nolte testified that he told the accused "that it looked as though he was in a lot of trouble, from the way he had procured a loan on that car."

The refusal of the trial court to grant a mistrial because of this latter statement of Nolte is the subject of the final assignment of error.

In overruling the motion the trial court promptly told the jury to disregard this statement of Nolte with respect

to the note. At the same time it told the jury that "the sole purpose" of the evidence as to the ownership and seizure of the cars was to aid them "in determining whether the accused had a motive for offering a bribe and not to show he has been convicted of other offenses or charged with other offenses."

Under such circumstances the refusal of the court to grant a mistrial was not error.

On the whole we find no error in the record and the judgment complained of is

*Affirmed.*