534 S.E.2d 332

Jeffery Andrew CRAWFORD, s/k/a Jeffrey Crawford

v.

COMMONWEALTH of Virginia.

Record No. 0683–99–1.

Court of Appeals of Virginia,
Chesapeake.

Sept. 19, 2000.

Jonathan W. Gatewood, King William, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: COLEMAN, BRAY and BUMGARDNER, JJ.

COLEMAN, Judge.

Jeffery Andrew Crawford was convicted in a jury trial of armed statutory burglary, rape, robbery, and abduction. The sole issue on appeal is whether the trial court erred by instructing the jury "that DNA testing is deemed to be a reliable scientific technique under the laws of Virginia when admitted to prove the person's identity." We hold that the jury instruction was improper and that the trial court abused its discretion. Accordingly, we reverse and remand.

## BACKGROUND

In November 1995, Crawford unlawfully entered Colleen Caton's home, put a knife to her throat, covered her eyes with his hand, and demanded money. Caton stated that she did not have any money in the house. Crawford then tied Caton's hands and raped her. After the assault, Crawford tied Caton's ankles together, searched for money, and left. Caton freed herself, immediately reported the incident, and gave the police a physical description of her assailant. A seminal fluid sample was recovered from Caton's clothing.

Two years later, Crawford was apprehended in Washington, D.C. At trial, Nathaniel Lockley, who had been incarcerated with Crawford in August 1997, testified that while in jail, Crawford confessed to him to having raped a woman two years earlier in Gloucester County and having fled to Maryland after the incident.

A forensic scientist performed a polymerase chain reaction (PCR) analysis of the DNA recovered from the victim's clothing and Crawford's DNA. The forensic scientist testified that she typed the DNA in six different systems and that Crawford's DNA was consistent with the DNA from the seminal fluid recovered from the crime scene in all six tests. The expert testified that the possibility of randomly selecting an African–American male whose DNA was consistent with the DNA in the seminal fluid sample in all six systems was one in 970. Had the DNA not matched in any one of the six systems, the test would conclusively have excluded Crawford as the person who deposited the seminal fluid at the crime scene.

The trial judge, over defense counsel's objection, gave the following jury instruction:

DNA testing is deemed to be a reliable scientific technique under the laws of Virginia when admitted to prove the person's identity. In deciding what weight, if any, to give the DNA evidence, you may consider any evidence offered bearing upon the accuracy and reliability of the procedures employed in the collection and analysis of a particular DNA sample. Regardless of the results of any DNA analysis, you

may consider any other evidence offered to prove the identity of the defendant.[1]

Crawford was convicted of each offense and was sentenced to a total term of life plus sixty years imprisonment.

## ANALYSIS

Crawford contends the trial judge erred in giving the DNA jury instruction. He argues that by instructing the jury that "DNA testing is deemed to be a reliable scientific technique," the court impermissibly told the jury that the Commonwealth's DNA evidence compelled a particular finding that the DNA test conducted here was reliable in identifying him as the rapist. He also argues that the instruction constituted an improper comment upon a specific piece of evidence and gave undue prominence to the DNA evidence.

■■ ·"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Darnell v. Commonwealth,* 6 Va.App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting *Swisher v. Swisher,* 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

> When a trial judge instructs the jury in the law, he or she may not "single out for emphasis a part of the evidence tending to establish a particular fact." The danger of such emphasis is that it gives undue prominence by the trial judge to the highlighted evidence and may mislead the jury.

*Terry v. Commonwealth,* 5 Va.App. 167, 170, 360 S.E.2d 880, 882 (1987) (citations omitted).

■■ However, in admitting scientific evidence, "the court must make a threshold finding of fact with respect to the reliability of the scientific method offered." *Spencer v. Commonwealth,* 240 Va. 78, 97, 393 S.E.2d 609, 621 (1990). "[I]f

---

1. At trial, the trial judge orally instructed the jury that "DNA testing is deemed to be reliable scientific *evidence* under the laws of Virginia...." (Emphasis added.) On appeal, neither party addresses the discrepancy between the trial judge's oral instruction and the written instruction.

the court determines that there is a sufficient foundation to warrant admission of the evidence, the court may, in its discretion, admit the evidence with appropriate instructions to the jury to consider the disputed reliability of the evidence in determining its credibility and weight." *Id.* at 97–98, 393 S.E.2d at 621 (citation omitted).

■ Code § 19.2–270.5, enacted by the General Assembly in 1990, provides, in part, that "[i]n any criminal proceeding, DNA ... testing shall be deemed to be a reliable scientific technique and the evidence of a DNA profile comparison may be admitted to prove or disprove the identity of any person." By enacting Code § 19.2–270.5, the General Assembly has declared that DNA testing and profile comparisons are recognized in the scientific community as reliable procedures for purposes of admitting the results into evidence in Virginia courts to prove or disprove a person's identity. The purpose of the statute is to recognize the reliability of the scientific techniques which underlie DNA testing and profile comparisons, thereby eliminating the need for exhaustive proof in each case of how and why profiling is scientifically reliable before the DNA evidence can be admitted. The purpose of the statute, thus, is to render DNA test results admissible. The statute does not, however, establish that a particular DNA test is reliable or has yielded reliable results that identify the accused in a particular case as the perpetrator.

■ Here, the instruction, based on Code § 19.2–270.5, not only informed the jury that DNA testing is recognized in Virginia as a valid scientific procedure in identifying a person as the source of DNA material, but also told the jury, in effect, that the DNA technique used in this case, which identified Crawford as the person who most probably deposited the DNA at the crime scene, was reliable—subject to "any evidence offered bearing upon the accuracy and reliability of the procedure employed in the collection and analysis of a particular DNA sample." By informing the jury that DNA testing was reliable, in the absence of an evidentiary challenge to the accuracy and reliability of the collection and analysis proce-

dure for the particular sample, the court gave credence to the specific test results even though the Commonwealth offered no proof that the collecting and testing procedure for this sample was reliable. Although the instruction did not tell the jury that they were to give any particular weight to the test results or that they were bound to find Crawford guilty based on the test results, the instruction unduly emphasized the DNA results over other evidence presented in the case tending to establish the assailant's identity.

Thus, the court's instruction did more than inform the jury that DNA testing is a competent and reliable scientific procedure and that the methodology is sound; it "singled out" the DNA test results and stated that DNA test results were reliable in establishing Crawford's identity as the perpetrator. Code § 19.2–270.5 permits trial courts to admit DNA test results without having to prove the scientific reliability of DNA testing; it does not, however, authorize trial courts to comment upon the reliability of particular DNA test results or techniques in a case.

Accordingly, the trial court erred by granting the DNA instruction based on Code § 19.2–270.5. We, therefore, reverse and remand the case for further proceedings.

*Reversed and remanded.*

BUMGARDNER, Judge, dissenting.

I respectfully dissent. I conclude the instruction correctly stated the law applicable to DNA evidence. It properly instructed the jurors on the legal principles, so they could apply that law to the evidence before them.

A court confronts two distinct considerations when a new scientific discovery is first offered to prove a fact. The first consideration is whether the newly discovered scientific principle is authentic. The second consideration is whether the scientific principle was applied properly to the particular circumstances of the case. The first inquiry tests the validity of the underlying scientific principle. The second inquiry tests the validity of the application of that principle. The

term "scientific technique" is used in both the Code and decisions when referring to the underlying scientific principle, and the term "procedure" is used when referring to the application of the principle. *See* Code § 19.2–270.5;[2] *Spencer v. Commonwealth,* 238 Va. 275, 289–90, 384 S.E.2d 775, 782–83 (1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990); *Satcher v. Commonwealth,* 244 Va. 220, 239–40, 421 S.E.2d 821, 832–33 (1992), *cert. denied,* 507 U.S. 933, 113 S.Ct. 1319, 122 L.Ed.2d 705 (1993).

When the Commonwealth first offered DNA evidence as a form of forensic evidence, it had to meet both tests.[3]  In *Spencer,* the Supreme Court ruled that the evidence presented at trial proved the underlying principle was reliable. "[T]he undisputed evidence showed that 'DNA printing' is a reliable scientific technique." 238 Va. at 289, 384 S.E.2d at 782–83. The Court also ruled the application of the principle was reliable. "[T]he testing procedure employed in the present case was conducted in a reliable manner." *Id.*

As the new scientific principle moves from being a theory to being an axiom, the need to prove the scientific principle ends. Courts no longer require proof of the underlying scientific principle for fingerprint evidence, radar, or blood alcohol tests. The scientific principle underlying each of those types of

---

**2.** Code § 19.2–270.5. DNA profile admissible in criminal proceeding. In any criminal proceeding, DNA (deoxyribonucleic acid) testing shall be deemed to be a reliable scientific technique and the evidence of a DNA profile comparison may be admitted to prove or disprove the identity of any person. This section shall not otherwise limit the introduction of any relevant evidence bearing upon any question at issue before the court, including the accuracy and reliability of the procedures employed in the collection and analysis of a particular DNA sample. The court shall, regardless of the results of the DNA analysis, if any, consider such other relevant evidence of the identity of the accused as shall be admissible in evidence.

**3.** "As with most new forms of scientific evidence, the attack upon DNA has been basically two-pronged; the defense seeks to persuade the court (a) that the basic principle is questionable or at least not yet proven; and/or (b) that the testing in the particular case was flawed." Charles E. Friend, *The Law of Evidence in Virginia* § 14–11, at 522–23 (5th ed.1999).

evidence progressed from theory to universal acceptance. The same progression has occurred with DNA testing.

The General Assembly enacted Code § 19.2–270.5 in 1990 and stated what had been decided in *Spencer:* "DNA testing is a reliable scientific technique." *Satcher,* 244 Va. at 240–41, 421 S.E.2d at 834. The statute confirmed that the scientific foundation for DNA testing was not susceptible to reasonable dispute. When an issue of fact is not subject to dispute, it is not an issue for the jury to decide. The statutory rule of evidence left only the second consideration as an issue of fact over which reasonable minds could differ. When presented with DNA test evidence, the only issue for the jury is whether the science was properly applied in the case. The science of DNA testing has moved from theory to axiom.

In this case, the trial court must instruct on DNA testing for the jury to apply the law properly. The jury must know that they do not assess the verity of the scientific foundation of DNA testing. However, they are to evaluate whether that principle was applied properly. The instruction given by the trial court instructed the jury on the distinction between "scientific technique" (which the jury must accept) and "procedures employed" (which they must question). The instruction carefully placed qualifiers at critical points to emphasize the discretion resting with the jury.

> In deciding *what* weight, *if any,* to give the DNA evidence, you *may* consider *any* evidence offered bearing upon the accuracy and reliability of the procedures employed in the collection and analysis of a particular DNA sample. *Regardless* of the results of any DNA analysis, you *may* consider *any other* evidence offered to prove the identity of the defendant.

(Emphasis added.) In no way did this instruction tell the jury that the test was reliable or compel that finding.

The majority holds that the instruction improperly singled out the DNA test results. As a general principle, an instruction should not appear to place judicial approval on selective evidence. *See Nelms v. Nelms,* 236 Va. 281, 374 S.E.2d 4

(1988); *see generally,* Kent Sinclair and Leigh B. Middle-ditch, Jr., *Virginia Civil Procedure* § 13.9 (3rd ed. 1998). However, that maxim is applied in the context of finding instructions or instructions that comment on specific items of evidence. *See Brown v. Commonwealth,* 238 Va. 213, 381 S.E.2d 225 (1989); *Nelms,* 236 Va. 281, 374 S.E.2d 4; *Williams v. Commonwealth,* 189 Va. 785, 54 S.E.2d 869 (1949); *Woods v. Commonwealth,* 171 Va. 543, 199 S.E. 465 (1938); *Brown v. Commonwealth,* 156 Va. 947, 157 S.E. 567 (1931); *Oliver v. Commonwealth,* 151 Va. 533, 145 S.E. 307 (1928); *Belote v. Commonwealth,* 135 Va. 468, 115 S.E. 520 (1923); *New York, Philadelphia & Norfolk R.R. Co. v. Thomas,* 92 Va. 606, 24 S.E. 264 (1896); *Brown v. Rice's Adm'r,* 76 Va. 629 (1882).

The maxim that an instruction should not emphasize one part of the evidence cannot apply when the trial court must explain a rule of evidence so the jury can properly apply that law to the facts of the case. Instructions that apply to one part of the evidence are replete: prior inconsistent state-ments, inference of intent, possession of recently stolen goods, blood alcohol concentrations, possession of forged writing, motive, inference of malice from the use of a deadly weapon, and willful concealment of merchandise.

In *Terry v. Commonwealth,* 5 Va.App. 167, 360 S.E.2d 880 (1987), this Court approved an instruction that told the jury it could consider the quantity, packaging, location, and use of the drugs in determining whether the defendant intended to dis-tribute them. The instruction did not impermissibly highlight any of the evidence to the exclusion of other evidence. The Court emphasized the instruction informed the jury of the types of evidence it could use to reach legal conclusions but it did not suggest that specific evidence impelled any particular finding, comment upon specific facts proven in the case, suggest the credibility or weight which should be given any specific evidence, or characterize the evidence by describing it. The instruction given in this case could be characterized in the same manner.

I would hold that the trial court properly gave the instruction to inform the jury of its proper but limited duty when assessing the DNA evidence. "The instruction was given to inform the jury of the proper and only purpose for which the evidence should be considered." *Williams,* 189 Va. at 791, 54 S.E.2d at 871. As such, it was a proper and necessary instruction. Accordingly, I would affirm.